295 So.2d 454 (1974)
Wilbert D'AVILLE, Plaintiff-Appellee,
v.
TRAVELERS INSURANCE COMPANY, Defendant-Appellant.
No. 4555.
Court of Appeal of Louisiana, Third Circuit.
May 24, 1974.
Rehearing Denied June 26, 1974.
Dubuisson, Brinkhaus, Guglielmo & Dauzat, by Jimmy L. Dauzat, Opelousas, for defendant-appellant.
Tate & Tate by Paul C. Tate, Mamou, for appellee.
Before FRUGÉ, DOMENGEAUX and WATSON, JJ.
FRUGÉ, Judge.
Wilbert D'Aville sues defendant Travelers Insurance Company, the insurer of his employer, Jerome Moore, and/or Eunice Superette Slaughter House, for workmen's compensation benefits. The trial court found plaintiff to be totally and permanently disabled and awarded judgment against Travelers for compensation at the rate of $49.00 per week for 500 weeks, together with medical expenses not to exceed $12,500. The trial court also awarded statutory penalties of 12% on all payments delinquent 60 days or more and attorney's fees in the amount of $4,500. We reverse in part and affirm in part.
Plaintiff was employed as a butcher for approximately four years in the "killing department" of the Eunice Superette. He was also the foreman of the "killing department". On October 3, 1971, plaintiff testified he injured his left arm when a calf struck the gate he was holding on to, knocking him down and causing him to hang by his left arm. While hanging onto the gate with his left arm, the calf passed between his legs, twisted him, and threw him to the ground.
Despite the accident, plaintiff continued working in the "killing department". He was seen by Dr. James T. Thompson, a *455 general practitioner in Eunice, on the day following the accident. Dr. Thompson diagnosed plaintiff's condition as a rupture of the long head of the biceps tendon; slight atrophy of the deltoid muscle; and weakness of the left upper extremity to extension and abduction. Dr. Thompson saw plaintiff between 10 and 20 times and referred him to Dr. Robert Luke Bordelon, an orthopedic surgeon in Opelousas. Dr. Bordelon found that plaintiff had a rupture of the biceps tendon, and some dysfunction of the rotator cuff, also called attrition of the rotator cuff. Dr. Thompson and Dr. Bordelon were of the opinion that plaintiff was unable to do overhead work with his left arm and should refrain from going in and out of cool places.
Dr. Fred C. Webre, an orthopedic surgeon of Lafayette, examined plaintiff at the request of Travelers. Dr. Webre concurred with the opinions of Drs. Thompson and Bordelon that plaintiff had a rupture of the left long head of the biceps tendon. Dr. Webre, however, found no indication of dysfunction of the rotator cuff, and consequently was of the opinion that plaintiff suffered no impairment to prevent him from working as a butcher.
Testimony of all doctors was introduced by way of deposition. The last deposition was taken on July 16, 1973. The trial was held five months later on December 17, 1973. On the morning of the date fixed for trial, Travelers presented a motion to the court for appointment of a physician to examine plaintiff under the authority of LSA-R.S. 23:1123. The trial court in effect denied the motion of Travelers by proceeding to hear the case on the merits.
Travelers assigns as error the failure of the trial court to grant the motion for a court appointed physician as required by LSA-R.S. 23:1123. Travelers relies on the alleged mandatory language of the statute. It is argued that the court is obliged to appoint a medical practitioner to examine the employee whenever there is any dispute regarding the condition of the employee. It is Travelers's contention that the conflict in the medical opinions of the experts requires the trial court in this case to order the employee to submit to examination by a court-appointed physician.
Counsel for plaintiff replies to this contention by pointing out that the motion was untimely, and the trial court properly exercised its discretion in trying the case. It is the contention of the plaintiff that this is merely a dilatory tactic to allow the defendant an opportunity to revise its position on the medical issue.
In order to facilitate an understanding of the issue, the statute itself should be examined. The statutory scheme of workmen's compensation is provided by LSA-R.S. 23:1021 et seq. The provision relied on by defendant is contained in Subpart F, Medical Examinations. We set out the text of the statutes which are applicable.
Section 1121:
"An injured employee shall submit himself to an examination by a duly qualified medical practitioner provided and paid for by the employer, as soon after the accident as demanded, and from time to time thereafter as often as may be reasonably necessary and at reasonable hours and places, during the pendency of his claim for compensation or during the receipt by him of payments under this Chapter."
Section 1122:
"The employer shall cause the examination provided for in the preceding section to be made immediately after knowledge or notice of the accident, and to serve a copy of the report of such examination made by the employer's physician upon the employee within six days after the examination. If the examination is not made and the report is not furnished by the employer within that time, the employee shall furnish a report of the examination made by his own physician to the employer, for which the employee shall be entitled to receive from *456 the employer the sum of one dollar. Upon the receipt by either party of such a report from the other party, the party receiving it, if he disputes the report or any statement therein, shall notify the other of that fact within six days, otherwise the report shall be prima facie evidence of the facts therein stated in subsequent proceedings under this Chapter."
Section 1123:
"If there be any dispute thereafter as to the condition of the employee, the court, upon application of either party, shall order an examination of the employee to be made by a medical practitioner appointed by the court. The fees of such examiner shall be fixed by the court at not more than ten dollars, and shall be paid in advance by the applicant. The medical examiner shall report his conclusions from the examination to the court, and such report shall be prima facie evidence of the facts therein stated in any subsequent proceedings under this Chapter."
The statutes reveal they are designed to be read together in order to give a proper assessment of the role of the medical examination in a compensation hearing. In view of the fundamental purpose of the workmen's compensation statute that the employee be paid for disability, the statute requires that a medical examination be made.
LSA-R.S. 23:1122 requires the employer to immediately call for a medical examination to be made after an accident. Similarly, Section 1123 would imply by its reference to the preceding statute that the court-ordered examination should be made as expeditiously as possible after there is a dispute between the parties regarding the medical evidence. The statute does not require that the trial court appoint a physician where the parties have had ample time prior to the date set for trial to request an examination of the employee. This would interfere with the orderly proceedings of trial courts and delay the employee's right to a judicial determination of disability. We do not imply that the trial court cannot order an examination if it is of the opinion further medical evidence is necessary.
The second error specified by the defendant is the finding made by the trial court that the employee was totally and permanently disabled within the meaning of the workmen's compensation statute. Defendant relies principally on the fact that plaintiff has continued to work for his employer. It is uncontested that Mr. D'Aville continues to function in the capacity of foreman or manager in charge of the "killing room" in the Eunice Superette. There is ample evidence, however, for the finding by the trial court that plaintiff was permanently and totally disabled from performing the duties of a butcher within the meaning of the workmen's compensation statute.
Drs. Thompson and Bordelon testified that plaintiff could not do the work he had previously done without considerable pain. Dr. Bordelon suggested plaintiff refrain from activities which require the overhead use of his arms and refrain from entering cool places. Dr. Webre, defendant's expert, agreed plaintiff has suffered a ruptured biceps tendon. However, Dr. Webre felt plaintiff could continue his occupation as before.
Testimony of plaintiff and the other butchers employed in the Eunice Superette was that plaintiff was unable to perform the work that he did prior to the accident. In the performance of his duties as a butcher, plaintiff had been required to devote a substantial amount of his time to work involving overhead use of the arms. In the course of inventory of the food locker to determine the number of animals to be slaughtered in a day, he was required to enter a cooler in which the carcasses were kept. He was also required to supervise the loading of trucks from the cooler. Plaintiff testified he was no longer to go *457 in and out of the cooler due to the discomfort he suffered because of the change in temperatures. He also stated he was unable to perform the work of splitting the carcasses and lifting them off the racks which required the overhead use of the arms. In view of this evidence, we cannot say that the trial judge erred in his conclusion that the plaintiff was totally and permanently disabled from his duties as a butcher.
The last contention of defendant is that the trial court erred in assessing penalties and attorney's fees for arbitrary and capricious failure to make payments. Defendant contends it was entitled to refuse payments due to the fact that plaintiff continued in his employment as a butcher and in view of the fact that there was conflict in the testimony of two orthopedic surgeons as to the ability of plaintiff to work.
The statute upon which the plaintiff bases his claim for penalties and attorney's fees is LSA-R.S. 23:1201.2. The statute is penal in nature and subject to the rule of strict construction. Plaintiff must show the failure to pay was arbitrary or capricious or without probable cause. It is not sufficient that defendant is cast in judgment. Under these facts, we find the showing made by plaintiff is insufficient for the award of penalties and attorney's fees.
For the reasons assigned, the judgment of the trial court is reversed insofar as it awards plaintiff penalties and attorney's fees. In all other respects, it is affirmed. Costs of this appeal are assessed against the defendant-appellant.
Reversed in part; affirmed in part; and rendered.
WATSON, J., dissents and assigns written reasons.
WATSON, Judge (dissenting):
I respectfully dissent from the views of the majority.
I find necessary only a consideration of the first contention by defendant: that the trial court erred in failing to grant defendant's motion for a court appointed physician, as required by LSA-R.S. 23:1123, which reads as follows:
If there be any dispute thereafter as to the condition of the employee, the court, upon application of either party, shall order an examination of the employee to be made by a medical practitioner appointed by the court. The fees of such examiner shall be fixed by the court at not more than ten dollars, and shall be paid in advance by the applicant. The medical examiner shall report his conclusions from the examination to the court, and such report shall be prima facie evidence of the facts therein stated in any subsequent proceedings under this Chapter.
A brief statement of the facts will facilitate examination of this issue. Plaintiff is a 41 year old male employed for approximately four years as a butcher in the "killing department" of the Eunice Superette. For some two years prior to the accident he had served as foreman of that department. He testified that he injured his left arm on October 3, 1971, in the course of his employment when he was holding a gate and a calf hit the gate, knocking him down and causing him to hang by his left arm which twisted as he was thrown to the ground.
The plaintiff was seen first by Dr. James Thompson, a general practitioner of Eunice, who saw him on the day following the accident and diagnosed his condition as a rupture of the long head of the biceps tendon; slight atrophy of the deltoid muscle; and weakness of the left upper extremity to extension and abduction. Dr. Thompson saw the plaintiff, by his estimate, between ten and twenty times during the course of which he referred him to Dr. Robert Luke Bordelon, an orthopedic specialist of Opelousas. Dr. Bordelon found that plaintiff had a rupture of the biceps *458 tendon and some dysfunction of the rotator cuff, also called attrition of the rotator cuff. In the opinion of Dr. Bordelon, plaintiff was disabled as to overhead work with his left arm and should refrain from going in and out of cool places.
Both Dr. Thompson and Dr. Bordelon testified by way of deposition, as did Dr. Webre who examined plaintiff on behalf of the defendant insurance company.
Dr. Fred C. Webre, an orthopedic surgeon of Lafayette, examined plaintiff and testified on behalf of Travelers. He described plaintiff's injury as an obvious rupture of the left long head of the biceps tendon, but he stated that he tested plaintiff for rotator cuff dysfunction and found him not to have any on his examination of January 16, 1973. Dr. Webre testified that, in his opinion, plaintiff could work without pain; that he had no evidence of specific impairment to prevent him from working as a butcher; and that he was able to abduct his shoulder without substantial pain.
This was the medical background of the case when, on the morning of the date fixed for trial, defendant insurance company presented through counsel a motion for the court to appoint a physician to examine plaintiff under the authority of LSA-R.S. 23:1123.
The trial court did not grant the motion by Travelers and proceeded to hear the case after which judgment was given in favor of plaintiff. Travelers has appealed, asserting first that the trial court erred in failing to follow the mandatory provisions of the statute.
In reply to Travelers' contention that the court erred in failing to appoint a physician, plaintiff makes the argument that the motion was not timely and that the trial court properly exercised its discretion. Plaintiff points out that the motion was not made until the morning of the trial, whereas the depositions of the doctors had been taken in June and July of 1973, several months prior to the December trial date. The plaintiff suggests that the motion for a court appointed physician would have resulted merely in a delay of the proceedings and also argues that there is no real conflict in the medical evidence.
However, a reading of the medical depositions convinces this writer that there is a sharp conflict between the opinions of the doctors involved in the case. The general practitioner and the orthopedic specialist who testified for the plaintiff find him to be disabled; on the other hand, the orthopedic specialist who testified on behalf of Travelers finds no evidence of a specific impairment which would prevent plaintiff from working as a butcher. Therefore, I conclude that there is a conflict or dispute as to the condition of plaintiff, in the contemplation of LSA-R.S. 23:1123.
On the suggestion that the motion for the examination came too late and would only result in a delay of the proceedings, I agree with the fundamental idea that a workmen's compensation suit is to be conducted as expeditiously as possible. However, in view of the mandatory language of the statute, I do not think that the motion in this case can be characterized properly as a purely dilatory tactic. It appears to me that an examination of plaintiff by a court appointed physician in this case would be quite appropriate. See Stroud v. Hartford Accident & Indemnity Co., 33 So.2d 772 (La.App. 2 Cir. 1948); Johnson v. Barworth Inc., 173 So.2d 349 (La.App. 1 Cir. 1965).
I note also that this is not a situation where the employee is not working and in dire need of compensation benefits, if he is legally entitled to them. Plaintiff here has not missed a day's work and the argument that defendant's motion would prejudicially delay the case loses much force under the circumstances.
Therefore, it is my opinion that the judgment in this case should be reversed and set aside and the matter remanded to the trial court for the appointment of a *459 physician to examine plaintiff and to make his report, with the matter thereafter to be reconsidered by the trial court on the basis of the present record and the additional medical information provided by the court appointed physician.
I would not reach the questions of disability, penalties and attorney's fee; therefore I express no opinion on these issues.
I respectfully dissent.