427 So.2d 33 (1983)
Kenneth W. GARY, Plaintiff-Appellee,
v.
DIMMICK SUPPLY COMPANY, Defendant-Appellant.
No. 82-475.
Court of Appeal of Louisiana, Third Circuit.
February 3, 1983.
*34 Onebane, Donahue, Bernard, Torian, Diaz, McNamara & Abell, Graham N. Smith, Lafayette, for defendant-appellant.
Louis M. Corne, Lafayette, for plaintiff appellee.
Before STOKER, YELVERTON and KNOLL, JJ.
YELVERTON, Judge.
This is a worker's compensation case. The employer, Dimmick Supply Company, is appealing from a judgment which held plaintiff, Kenneth Gary, totally disabled and entitled to worker's compensation benefits under LSA-R.S. 23:1221(1). We affirm.
Kenneth Gary was employed as an automobile parts counter salesman. His duties included lifting automobile parts weighing from 20-80 pounds. These parts were located on shelves which required bending and climbing. Plaintiff also helped offload trucks of new inventory.
On the morning of July 13,1981, plaintiff was helping unload a truckload of 40-50 pound units when he felt something pull in his neck and back. He completed the day's work in pain. The next morning he saw Dr. Ray Boyer who diagnosed a pulled trapezius muscle. He was paid compensation benefits until November 10, 1981, when payments were terminated. This suit followed.
The underlying and primary issue in the case is whether the trial court's finding of total disability is based on a condition causally related to the accident. Simply stated, defendant contends that the job accident injured plaintiff's neck only, that the condition for which the trial court found him disabled at trial involved his mid-back and low back, that the preponderance of medical testimony did not assign a causal relationship between the neck injury and the later developing back symptoms, and that therefore plaintiff's disability was not caused by an on-the-job injury.
Following presentation of plaintiff's case on the merits on January 19,1982, his counsel asked that the case be held open for additional medical tests, specifically thermograms, to help precisely locate the area of plaintiff's greatest pain. This had been a problem not only for the physicians but also at the trial, due largely to the nature of the injury, but also in part to plaintiff's *35 inability to articulate his symptoms exactly. The trial court's impression was that plaintiff was sincere and honest. Believing that thermographic studies would be helpful, he held the case open. Defendant believes this was an abuse of discretion and this is another of the issues on appeal.
The remaining issue concerns the mode of presentation of defendant's rebuttal to the thermographic tests. The trial court granted defendant's request to hold the case open for rebuttal after the thermographic tests were completed. Defendant wanted to enter its rebuttal expert's testimony into the record by deposition. The trial court insisted on live testimony. As a result, defendant chose to forego rebuttal altogether and now assigns the refusal of the trial court to receive a deposition as error.
We will consider, first, the issue of the trial court's determination as to causation, then proceed to a discussion of the two procedural issues.

Was Plaintiff's Disability Caused by an On-The-Job Injury?
The plaintiff in a workmen's compensation action has the burden of establishing by a preponderance of the evidence the causal connection between his disability and the accident. Martin v. H.B. Zachry Company, 424 So.2d 1002 (La.1982).
That plaintiff had an accident on the job is not disputed. The dispute concerns whether the low back pain found at trial to be disabling was caused by the accident. Plaintiff testified that when he was injured on July 13 he felt something pull in his neck and back but he continued working in pain the rest of the day. The following morning he went to Dr. Boyer. He initially was concerned about the pain and stiffness he was experiencing in his neck but also had pain in his back at that time. He returned to work and continued part time until July 28 when Dr. Boyer told him to stop. During this time he was supposed to be on light duty; however, his duties were the same as before the accident. He walked with a limp. He tried to resume work on August 27 but was forced to leave due to pain in his low back. The lifting of parts weighing 40-50 pounds and bending increased the pain in his back. At the time of trial the pain in his low back was approximately six inches above the beltline to three inches below, and it had been increasing in intensity. The fact that plaintiff had been experiencing pain in his back was corroborated by his mother's testimony.
The medical evidence consisted of the testimony of Dr. Louis Blanda and the depositions of Dr. Ray Boyer, Dr. Fred Webre, and Dr. Masako Wakabayashi.
Dr. Boyer examined plaintiff on July 14, 1981, the day after the accident. Plaintiff complained of soreness in his neck and told the doctor that the day before he had felt something "pop" in the left side of his neck. Dr. Boyer found tenderness at the base of the left side of the neck. He diagnosed a pulled trapezius muscle. On July 30 plaintiff complained of pain in the paraspinal and thoracic areas and on August 14 he additionally complained of pain at approximately the L1-L2 level of his back. Dr. Boyer felt that the pain in the paraspinal and thoracic areas as well as the pain at the L1-L2 level was all related to the original injury since the trapezius muscle extends down to the L2 level. On subsequent visits in August and September plaintiff complained of low back pain and numbness in his right leg. Dr. Boyer did not think these symptoms were caused by the original injury since their occurrence was too far removed in time from the date of the injury. However, because of these symptoms Dr. Boyer recommended that plaintiff not return to work until further testing.
On the initial visit (August 24, 1981) to Dr. Fred Webre, an orthopedic surgeon, plaintiff described pain in his low back at belt level and just below in the buttocks area. Dr. Webre found some muscle soreness but felt that plaintiff could return to work as a counter salesman. On December 22 the plaintiff again visited this doctor complaining of pain in his back. Tests were negative. The doctor stated that if he had found muscle spasm he would not have released the plaintiff to return to work since *36 a spasm signifies that injury is not completely healed and lifting could cause an aggravation of the injury. The doctor also testified that his release of the plaintiff back to work was limited to light duty. The plaintiff was supposed to refrain from constant heavy lifting. Dr. Webre did not think the low back pain was caused by the accident.
Dr. Louis Blanda, an orthopedic surgeon, examined plaintiff on September 14, 1981, as well as September 30 and November 11. His impression was that plaintiff's pain was caused either by a lumbar muscle strain type syndrome to the muscles or ligamentous structures of the back, or from an inflammatory type of myofascitis located at a false joint formation at the sacrum, or a combination of both. According to the history plaintiff told him that he had injured his neck and that a couple of days afterwards his low back also began to hurt. Therefore, this doctor felt the injury to plaintiff's low back was related to his injury at work. Dr. Blanda also testified that if the plaintiff did not have pain in his low back until a month following the accident he would not think that the low back pain was caused by the initial injury. However, the doctor discovered that plaintiff had an abnormal lumbosacral area which acted as an arthritic joint and a triggering mechanism for pain which could have been activated by an abnormal compensatory movement such as listing to one side or walking in a tilted manner. On the November 11 visit Dr. Blanda noted that plaintiff was still complaining of pain in the mid back region. The doctor concluded that plaintiff was probably suffering from a strain syndrome to both the thoracic and cervical areas.
Plaintiff was last seen by Dr. Masako Wakabayashi, a radiologist specializing in thermographic studies. On plaintiff's initial visit to this doctor five thermographs were performed at the lumbar region. Dr. Wakabayashi explained that these tests are designed to measure the heat of the body. An increase in heat emissions often coincides with pain or trauma and such tests are more sensitive than testing with human hands. The first series of tests revealed that plaintiff had paravertebral muscular spasms in the lower spinal region. The increased areas of heat emission were more significant on the left side. The second series of thermographs were made on January 27, 1982, focusing on the upper part of the back and down to the middle part of the thoracic area. The tests revealed an increased heat emission in the upper and lower portions of the thoracic region entirely. Dr. Wakabayashi was under the impression that plaintiff was suffering from paravertebral muscle spasms in both the thoracic and lumbar regions since the most significant increases in heat were in the lower thoracic and mid and lower lumbar regions. She stated that more likely than not these areas were producing pain.
On the basis of this medical evidence and the lay testimony, the trial court found that plaintiff was disabled as a result of the on-the-job injury. The defendant contends that the evidence failed to show a causal connection between plaintiff's complaints of low back pain and the accident. We disagree.
As the Supreme Court in Martin v. H.B. Zachry Company, supra, stated:
"[T]he ultimate determination as to whether a plaintiff has proved the causation of his disability is made by the courts and not by medical experts. The courts apply legal tests to the facts of the case in order to achieve a just and equitable result. Causation is not necessarily a medical conclusion."
Where there is proof of an accident and of the following disability without any intervening cause it is presumed that the accident caused the disability. Guillory v. U.S. Fidelity & Guaranty Ins. Co., 420 So.2d 119 (La.1982). In the present case plaintiff was in good health prior to the accident, and according to his testimony the back pain has manifested itself continuously thereafter. The medical evidence is uncontradicted that the pain suffered by plaintiff in the thoracic and cervical regions was related to the accident. Dr. Blanda testified *37 that if plaintiff's low back pain manifested itself within a few days of the accident, then he would think that plaintiff's low back pain would also be related to the accident. According to plaintiff's testimony his low back pain manifested itself within a couple of days of the accident.[1] Considering this evidence we cannot say that the trial court was clearly wrong in finding that the plaintiff's back pain was causally connected to the accident.
We will now consider the procedural decisions which appellant contends were erroneous.

Holding the Case Open for Additional Evidence
This issue concerns the action of the trial court in holding the case open for further medical tests and the testimony of Dr. Masako Wakabayashi of New Orleans.
The decision to hold open or reopen a case for the production of additional evidence is within the sound discretion of the trial judge and his decision will not be disturbed on appeal unless abused. LSA-C. C.P. Articles 1631 and 1632; Harrison v. South Central Bell Telephone Co., 390 So.2d 219 (La.App. 3rd Cir.1980), writ denied, 396 So.2d 900 (La.1981); Baltzar v. Missouri Pacific Railroad, 406 So.2d 324 (La.App. 3rd Cir.1981); Gauthier v. Helmerich & Payne Drilling Co., 401 So.2d 692 (La.App. 3rd Cir.1981). Also, under LSA-R.S. 23:1123 the trial court had authority to order additional medical examination if it was of the opinion further medical evidence was necessary. See LSA-R.S. 23:1123 and D'Aville v. Travelers Ins. Co., 295 So.2d 454 (La.App. 3rd Cir.1974).
The trial court did not abuse its discretion in holding the case open.

The Trial Court's Requirement for Live Rebuttal Testimony
The appellant finally argues that the trial court abused its discretion in requiring the defendant to present live testimony in rebuttal to the thermographic examinations. We disagree.
As previously noted in the history of this case, the trial court granted plaintiff's motion to hold open the case for further medical testing in the form of thermographs. After the testing was complete and the testimony of Dr. Wakabayashi was received, appellant filed a motion seeking additional time to obtain rebuttal testimony from a Lafayette physician regarding the attitude of the Lafayette medical community about the reliability of thermographic testing. The trial court granted this motion but ordered the defendant to produce the physician for live testimony instead of allowing a deposition to be taken and used. Eventually the defendant requested that the court rule on the merits rather than produce a live witness for rebuttal purposes. Defendant now complains that the trial court erred in not permitting the deposition to be taken and introduced into evidence.
Pertinent to this issue is LSA-C.C.P. art. 1450(3)(e), which states:
"(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: ...
"(e) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used."
The only reason given by defendant to support its insistence on the use of a deposition rather than presenting live testimony was that to present live testimony would be an undue burden and expense. Defendant argued that it would probably cost $800 to $1,200 in expert fees. However both physicians mentioned as possible expert witnesses were local Lafayette physicians, one of whom, Dr. Blanda, had previously testified at the January hearing and stated that his fee was $250. The trial court in its oral reasons for judgment stated that

*38 "... such an important witness should be where his demeanor is available to the court and where he is available for questioning by the Court, and when the Court says this, it's not being an advocate for plaintiff or defendant; but it is the Court's duty to inform itself as much as possible on every issue...."
We firmly agree and therefore do not find an abuse of discretion in requiring live testimony under the circumstances presented.
For the assigned reasons the judgment of the trial court is affirmed at appellant's costs.
AFFIRMED.
NOTES
[1] The evidence also indicates that plaintiff began to limp shortly after the accident due to his injuries and according to Dr. Blanda's testimony such an abnormal compensatory movement may have activated pain in plaintiff's abnormal lumbosacral area.