520 So.2d 1126 (1987)
Tony J. LATIOLAIS, Plaintiff-Appellant,
v.
JERNIGAN BROS., INC., et al., Defendant-Appellee.
No. 86-1153.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1987.
*1127 Thompson & Sellers, Charles M. Thompson, Jr., Abbeville, for plaintiff-appellant.
Sutherland & Judge, Suzanne P. Keevers, New Orleans, for defendant-appellee.
Before DOUCET, KING and CULPEPPER[*], JJ.
DOUCET, Judge.
This is a suit in worker's compensation arising under the 1983 amendment to the Worker's Compensation Act. The claim arises out of a work-related accident sustained by plaintiff, Tony J. Latiolais, while in the employ of Jernigan Brothers, Inc. Made defendants were Jernigan Brothers, Inc. and their worker's compensation insurer, Mission National Insurance Company. Plaintiff brought a claim against defendants for worker's compensation benefits and was paid weekly compensation benefits in the amount of $140.07 per week by defendant until trial. In this matter, plaintiff is seeking authorization for further surgery.
The facts show that on July 10, 1984, plaintiff was injured while employed as a swamper on a Jerigan Brothers truck in Jefferson County, Texas. Plaintiff was injured when he was helping to unload a rig when it was picked up before he was out of the way and he was knocked off of the rig approximately six or seven feet to the ground. As a result of the accident, plaintiff suffered injuries to his head and back.
After brief medical treatment in Winnie, Texas, where the accident occurred, plaintiff returned to Lafayette complaining of headaches, neckaches, and low back pain and was seen by Dr. J. Robert Rivet, a neurosurgeon. Dr. Rivet admitted plaintiff to Lafayette General Hospital on August 8, 1984 for testing. Plaintiff underwent a CT scan on his skull and also underwent cervical and lumbar myelograms. All test results were within normal limits and Dr. Rivet discharged plaintiff on August 9, 1984, noting "myelograms within normal limits, having nothing further to offer, will sign off and turn over patient to Dr. Simon."
After brief physical therapy with Dr. Jim Simon, a rehabilitation specialist, plaintiff saw orthopedic specialist Dr. John Cobb on August 11, 1984. A work-up of plaintiff's lumbar spine consisting of a CT scan and a myelogram was performed. Additionally, a cervical myelogram was performed on plaintiff. Dr. Cobb testified that the results of these tests were within normal limits.
Plaintiff was discharged on August 15, 1984 and returned to Dr. Cobb for an office visit on August 29, 1984, complaining of both neck and back pain and numbness in his fourth and fifth fingers. Dr. Cobb, at this time, informed plaintiff that in order to further define the etiology of his back pain, plaintiff needed to have a discography performed. The discography or lumber disc study was performed in November and the results indicated that plaintiff had an incompetent disc, characteristic of an internal disruption of the L5, S1 disc.
*1128 Dr. Cobb next saw plaintiff in January of 1985 (six months from the date of the injury) and at this time plaintiff related to Dr. Cobb that he was still having unacceptable levels of pain in his back. Dr. Cobb put plaintiff on voluntary restriction of activities and stated that in order to recommend surgery, he would not make this decision unilaterally. If plaintiff felt that his pain was sufficient enough to disable him and if plaintiff also felt that his lifestyle was altered by pain and the pain was disabling in terms of earning a living, then he would be agreeable to performing a surgical procedure to ease the pain. The surgical procedure that would be required is called a discectomy and an inner body fusion. Plaintiff expressed desire for this surgery.
Defendants had plaintiff examined by Dr. Michel Heard and Dr. Anthony Iopollo and based upon all medical information available refused to authorize surgery. As a result of this refusal, plaintiff filed suit seeking worker's compensation benefits in the form of medical expenses. Plaintiff also sued for penalties and attorney's fees urging that defendants had willfully and arbitrarily refused to pay medical expenses for the surgery recommended by Dr. Cobb.
A trial of the merits was held and at the conclusion of the trial the court took the matter under advisement.
Subsequently, on its own motion, the court appointed Dr. Douglas A. Bernard to examine plaintiff and submit to the court a report of the examination. The report was subsequently introduced into evidence at the motion of defendants.
Reasons for judgment were thereafter rendered by the trial court judge and in her reasons for judgment, she denied the surgery recommended by Dr. Cobb. Moreover, the court also found that plaintiff was no longer disabled under any provision of the Louisiana Worker's Compensation Act. Judgment was signed in accordance therewith. It is from this judgment that plaintiff appeals.
Plaintiff asserts four assignments of error, the first being that "The trial court erred in ruling that the appellant, Tony J. Latiolais, was no longer disabled under any provision of the Louisiana Worker's Compensation Act as this issue was not before the court for determination." We disagree.
The issue of disability is essential to any action arising under the worker's compensation statute. Moreover, the issue of plaintiff's disability was presented to the court in pleadings and through evidence adduced at trial. When plaintiff filed his petition, he specifically put his disability at issue. Plaintiff's petition, in paragraph seven, reads as follows:
"As a result of the said accident and injury, plaintiff is totally incapacitated to perform work of any reasonable character for which he is suited by reason of his training and experience and is totally and permanently disabled from the performance of his trade and occupation." (emphasis ours)
Moreover, in answer to interrogatory number 22, plaintiff indicated that he would call his wife as a witness at trial to "discuss my injury and disability." Also, in his prayer plaintiff asks for relief as follows:
"Alternatively, for such other sums and amounts that the court may direct, or for any other award justified under the provisions of the Louisiana Worker's Compensation laws."
Finally, on direct examination, plaintiff testified that his pain was unbearable and constant and that all he was able to do was lie down, walk around, and take medication.
The court in Greer v. Continental Casualty Company, 347 So.2d 70 (La.App. 2nd Cir.1977), stated:
"We abandoned the theory of case pleading and in recent years have liberally construed our procedural laws to allow consideration of any cause of action or defense even if not properly labeled or prayed for, if the pleadings taken as a whole, contained sufficient factual allegations to afford fair notice to the adverse party of the relief sought."
Moreover, in Hobbs v. Fireman's Fund American Insurance Companies, 339 So. 2d 28 (La.App. 3rd Cir.1976), writ den. 341 *1129 So.2d 896 (La.1977), the court stated that "A trial judge may grant relief to a party as the evidence indicates and is not restricted to relief prayed for."
As correctly stated by the trial court judge, "Considering that in his petition plaintiff alleges facts sufficient to establish a claim for disability, this court finds that under the liberal rules of pleading existing in Louisiana the issue of plaintiff's disability is before this court. Moreover, the issue of whether or not the surgery is a necessary medical expense for which defendants are liable is so intertwined with the issue of plaintiff's disability that, in the interest of judicial economy, it is incumbent upon this court to find that the issue of disability has been placed before it."
Plaintiff contends that since he was already receiving benefits in the form of weekly cash payments, any suit filed on his behalf seeking an award of such benefits would be premature. The fact that a suit for such benefits would have been premature on plaintiff's part is irrelevant. The fact is that plaintiff did not file suit for payment of weekly payments. Instead, plaintiff filed suit for authorization of further medical treatment after submitting his claim to the office of worker's compensation for resolution and after defendant rejected the recommendation. The suit was not premature. Defendant only requested the trial court judge to rule on plaintiff's disability status after the pleadings were effectively enlarged. As correctly stated in defendants' appellate brief, "If a compensation claimant chooses to bring suit for benefits, which suit leads to the introduction of sufficient evidence that he is no longer disabled, then a judgment must be entered accordingly."
Plaintiff next urges that "The trial court erred in giving more weight to the testimony of physicians retained by the defendant for trial purposes than to the testimony of the appellant's treating physician." We disagree.
While we are aware of the well accepted principal that the opinion of a treating physician is to be given more weight than the opinions of those doctors retained for trial purposes only, we also note that a treating physician's testimony must be weighed in light of other credible evidence. See Schouest v. J. Ray McDermott, 411 So.2d 1042 at 1044 (La.1982) citing Vicknair v. Southern Farm Bureau Cas. Ins. Co., 292 So.2d 747 (La.App. 4th Cir.1974), writ den. 296 So.2d 838 (La.1974). This court is not bound to blindly give credence to the opinion of a physician simply because he is the plaintiff's treating physician. For reasons which will be discussed further in plaintiff's final specification of error, we find that it was entirely within the trial judge's province to give more weight to the opinions of the other physicians involved in this case.
Plaintiff next asserts that "The trial court erred in admitting into evidence the report of Dr. Douglas A. Bernard, this report having been obtained on the court's own motion, after the trial of this matter, and without the benefit of the plaintiff-appellant being able to cross-examine this witness." We disagree.
As previously stated, the court, on its own motion, appointed Dr. Douglas A. Bernard to examine plaintiff and to submit to the court a report of the examination. The report of Dr. Bernard was submitted to the court and on motion of defendants, the court admitted this report into evidence.
It is a well established principle of law that in a worker's compensation case the trial court has authority to engage an expert witness to advise the court. Gary v. Dimmick Supply Co., 427 So.2d 33 (La. App. 3rd Cir.1983). Section 1123 of the worker's compensation statute provides in pertinent part that the reports of such court appointed experts "...shall be prima facie evidence of the facts therein stated...." Thus, the report of Dr. Bernard is to be given substantial weight. The fact that appellant was unable to cross-examine Dr. Bernard is of no moment in light of the trial court judge's post-trial order which provided that a copy of Dr. Bernard's report would be served upon counsel who would then have a period of time to submit any rebuttal. Appellant failed to submit *1130 anything. Moreover, appellant did not move the court to hold open proceedings pending his taking Dr. Bernard's deposition. Hence, based on the foregoing, we find that the report of Dr. Douglas Bernard was properly admitted into evidence.
Finally, plaintiff urges that "The trial court erred in not granting the relief prayed for by the appellant, specifically ordering the defendants to provide the funds for the recommended surgery and to award appellant penalties and attorney's fees." We disagree.
Dr. J. Robert Rivet saw plaintiff after the accident at which time plaintiff was complaining of headaches, neckaches, and back pain. Dr. Rivet admitted plaintiff into the hospital for testing and a cervical and lumbar myelogram was performed. Both tests were within normal limits. Having nothing more to offer plaintiff, Dr. Rivet then released plaintiff from his care.
Dr. Michel E. Heard subsequently examined plaintiff. The examination consisted of a lumbar myelogram, two CT scans, and several sets of X-rays. Based on the results of these tests, Dr. Heard testified that he found no objective evidence indicating that there is a need for plaintiff to undergo surgery. Dr. Heard also testified that plaintiff's responses to the pin prick test indicated exaggeration and possibly complete fabrication. Additionally, Dr. Heard testified at trial that the discogram is partly objective and partly subjective. Dr. Heard testified that with respect to the subjective part, he has discounted the reliability of plaintiff's reporting because of the suspicion of exaggeration he found during the examination. Dr. Heard was also of the opinion that the discography is an inaccurate study and that it is responsible for the over-aggressive diagnosis and over-aggressive surgical treatment of spinal problems. Dr. Heard added that the discogram is a test that has 50% false positives and for that reason it would be wrong to carry out lumbar surgery based on the findings of a discogram alone. Dr. Heard placed no restrictions on plaintiff and was of the opinion that plaintiff was able to return to work.
As previously stated, the lower court, on its own motion, appointed Dr. Douglas Bernard to examine plaintiff and to submit to the court his findings. Dr. Bernard examined plaintiff as requested and reported that in his opinion, plaintiff was not being honest concerning his illness. Dr. Bernard reviewed all films including the myelograms, CT scans, X-rays, and discograms. Dr. Bernard could find nothing abnormal which would warrant further treatment. Dr. Bernard expressed the opinion that based on recent literature, using discograms in lieu of CT scans and myelograms for decision-making purposes are not recommended. Concluding that plaintiff exhibited overt signs of malingering, Dr. Bernard stated:
"There are times when we examine people when it is hard to say if there is really something wrong with them or not. There are, however, times as in Mr. Latiolais' case when there are many things that are totally inconsistent with anatomy or expected findings for the types of problems that we deal with. They can only be found if someone is faining [sic] illness. I would therefore think that Mr. Latiolais is malingering and could not feel that there is a significant physical impairment of the patient at this point in time. There is no objective evidence to indicate such a physical impairment but only that which would suggest overt malingering on the part of the patient."
Finally, Michael D. Breaux, a private investigator, testified that he conducted a surveillance on plaintiff for the purpose of documenting plaintiff's outside activities. Mr. Breaux observed and videotaped plaintiff mowing his lawn and during his observations, Mr. Breaux testified that plaintiff never had a limp or showed any difficulties moving around. At trial, plaintiff, on direct and cross-examination, specifically denied being able to do any kind of yard work.
Based on the foregoing, we find that the trial court did not err in denying plaintiff the surgery recommended by Dr. Cobb. The record is replete with evidence in support *1131 of such a finding. As such, we will not disturb the trial court's finding on appeal.
Having found that plaintiff is not in need for further surgery, we find that the trial court did not err when it denied plaintiff penalties and attorney's fees.
Accordingly, for the foregoing reasons, the judgment of the district court is affirmed. All costs are assessed to plaintiff-appellant.
AFFIRMED.
NOTES
[*] Honorable William A. Culpepper, Judge, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.