685 So.2d 393 (1996)
Minnie WATKINS, PlaintiffAppellee,
v.
ASPHALT ASSOCIATES, INC., DefendantAppellant.
No. 96-249.
Court of Appeal of Louisiana, Third Circuit.
December 4, 1996.
*394 J.E. Guglielmo, Jr., Robert Thomas Jacques, Jr., Lake Charles, for Minnie Watkins.
Shelly D. Dick, Baton Rouge, for Asphalt Associates.
Before KNOLL, WOODARD and DECUIR, JJ.
KNOLL, Judge.
This is a worker's compensation case. The hearing officer determined that Minnie Watkins, the worker, had suffered a work-related injury while she was in the employ of Asphalt Associates, Inc. (Asphalt Associates) and that she was entitled to temporary total disability *395 benefits. In her order, the hearing officer also appointed an independent medical examiner, Dr. Warren Williams, a neurosurgeon, to address the further course of Watkins' medical treatment. The hearing officer denied Watkins' claim for penalties and attorney's fees.
Asphalt Associates appeals, contending that the hearing officer erred: (1) in finding a work-related accident; (2) in her determination of Watkins' rate of pay; (3) in her determination that Watkins was entitled to temporary total disability benefits; (4) in appointing Dr. Williams to perform an independent medical examination; and, (5) in permitting the introduction of certain documentary evidence over its objections of hearsay and relevancy.
Watkins answered the appeal, contending that the hearing officer erred: (1) in denying her claim for penalties and attorney's fees; (2) in failing to award medical treatment recommended by her treating physician; and (3) when she ordered Dr. Williams to conduct an independent medical examination. We amend the hearing officer's order as it pertains to Watkins' hourly wage and affirm the order in all other respects.

FACTS
The record shows that Asphalt Associates employed Watkins as a truck driver and laborer. In February of 1993 she injured her lower back when she and a coworker, David Comeaux, moved a 300-400 pound concrete breaker that was blocking a portion of a Lake Charles street that Asphalt Associates was resurfacing.
Watkins reported the accident shortly afterwards and was sent to the company physician, Dr. Carl Nabours. After Dr. Nabours treated Watkins, she was seen by two orthopedic surgeons and two neurosurgeons. Because Watkins' medical condition is the primary issue on appeal, we will elaborate upon the medical testimony later in the opinion.
Watkins received temporary total disability payments from Asphalt Associates until January 26, 1994. Asphalt Associates then paid Watkins supplemental earnings benefits until March 9, 1994, the date of her last worker's compensation payment.

PROOF OF A WORK-RELATED ACCIDENT
Asphalt Associates first contends the hearing officer erred in finding that Watkins proved she suffered a work-related accident. It contends that its records show that Watkins was not at work on the day she allegedly injured her back.
The claimant in a worker's compensation case has the burden of proving a workrelated accident by a preponderance of the evidence. Bruno v. Harbert Int'l Inc., 593 So.2d 357 (La.1992). Proof by a preponderance of the evidence is sufficient when the evidence taken as a whole, shows that the fact sought to be proved is more probable than not. Chitman v. Davison Trucking, 28,073 (La.App. 2 Cir. 2/28/96), 669 So.2d 671.
In determining whether the worker has discharged the burden of proof, the trier of fact should accept as true a witness' uncontradicted testimony, although the witness is a party, absent circumstances casting suspicion on the reliability of his testimony. A worker's testimony alone may be sufficient to discharge the burden provided that two essential elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the incident. Bruno, 593 So.2d 357.
In the case sub judice, the record shows that Mark McCain, one of Watkins' fellow workers, saw Watkins and David Comeaux attempting to move the large, concrete breaker. Comeaux testified that he witnessed Watkins grab her back after she attempted to move the breaker. Another worker, Janet Stover, testified that Watkins reported the injury the next day to the supervisor, Kenneth Hollier.
Watkins specifically addressed Asphalt Associates' assertion that she was not at work on the day shown on the accident report. Watkins testified that when the adjustor asked her for the date of the accident, she could not remember the exact date and simply *396 guessed at the date. Although the date provided may not have been correct, Dr. Nabours' medical notes show that Watkins told him on March 15, 1994, that she hurt her back two weeks earlier while attempting to move the concrete breaker.
After considering evidence in light of the aforestated jurisprudence, we find that Watkins met her burden of proving that she suffered a work-related accident. Accordingly, we find no manifest error in the hearing officer's determination that Watkins was injured at work.

TEMPORARY TOTAL DISABILITY
Asphalt Associates next contends that the hearing officer erred in finding that Watkins was temporarily totally disabled at the time of trial. It argues that the medical evidence overwhelmingly establishes that she was able to return to her job no later than March 9, 1994.
An employee is entitled to receive temporary total disability benefits only if he proves that he "is physically unable to engage in any employment or self-employment." La.R.S. 23:1221(1)(c). Effective January 1, 1990, a claimant must prove a disability that renders him unable to work by clear and convincing evidence. Belaire v. L & L Oil Co., 93-1198 (La.App. 3 Cir. 5/4/94), 636 So.2d 1177. The clear and convincing standard is a heavier burden of proof than the usual civil preponderance of the evidence standard but less burdensome than the beyond a reasonable doubt standard of criminal law. Bundren v. Affiliated Nursing Homes, Inc., 94-808 (La.App. 3 Cir. 2/1/95), 649 So.2d 1177. To prove a matter by clear and convincing evidence means to demonstrate that the existence of a disputed fact is highly probable; that is, much more probable than its nonexistence. Id.
It is well settled that the standard of review of a hearing officer's conclusions is the manifest error/clearly wrong standard. Belaire, 636 So.2d 1177. That standard of review is set forth by our Supreme Court in Rosell v. ESCO, 549 So.2d 840 (La.1989), and Stobart v. State, through Dept. Of Transp. and Development, 617 So.2d 880 (La.1993).
Watkins first saw Dr. Nabours, a family practitioner, on March 15, 1993, for pain in the lower back. He diagnosed a lumbar strain, placed her on anti-inflammatory medication, and ordered bed rest for a few days. He released her to return to work on March 19, 1993. Watkins returned to Dr. Nabours on April 12, 1993, with continued pain in the low back. When Watkins' condition did not improve, Dr. Nabours referred her to Dr. Lynn Foret, an orthopedic surgeon.
On April 29, 1993, Watkins underwent a CAT scan that was ordered by Dr. Foret. On May 19, 1993, Dr. Foret reported that the CAT scan revealed mild fascia trouble in Watkins' lower back, and a congenital nerve root problem that was unrelated to the accident. On June 10, 1993, Dr. Foret released Watkins to perform light duty work.
On June 10, 1993, Dr. Thomas B. Ford, an orthopedic surgeon, examined Watkins apparently at the request of Asphalt Associates. Dr. Ford reviewed the prior CAT scan and diagnosed Watkins as having suffered a mild to moderate lumbar straining injury. He recommended a two-week exercise program before she be allowed to return to work.
Watkins was next seen on June 29, 1993, by Dr. William F. Foster, a neurosurgeon who became her treating physician. Dr. Foster observed moderately severe muscle spasm of the paraspinous group, tenderness over the right sciatic notch, a positive straight leg raising, and increased pain referred into the right leg.
On Dr. Foster's orders, Watkins underwent a MRI, a lumbar myelogram, and a CT lumbar scan. The MRI performed on July 12, 1993, showed no abnormality. The lumbar myelogram performed on August 17, 1993, showed a slight decreased filling of the left S1 nerve root sheath. Likewise, the CT lumbar scan taken after the myelogram showed right lateral bulging of the L5-S1 intervertebral disc abutting the nerve root. An EMG study done by Dr. Fayez Shamieh, a neurologist, showed no abnormality. Based on these studies, Dr. Foster advised *397 Asphalt Associates' insurer on September 1, 1993, that Watkins was 100% disabled because of a herniated disc. At that time he recommended that Watkins undergo a lumbar discectomy and foraminotomy because he found definite bulging of the disc about the S-1 nerve root on the right side.
On September 8, 1993, Dr. John Raggio, a neurosurgeon, evaluated Watkins as an independent medical examiner. He reviewed the CT scan and MRI of August 17, 1993, relied upon by Dr. Foster, and found that the defects were not corroborated by clinical findings; moreover, based upon that CT scan and MRI he would not recommend surgical intervention. At best, Dr. Raggio found that Watkins suffered a lumbar strain that should have healed. Based upon his findings, Dr. Raggio released Watkins to return to work with no restrictions.
As a result of the conflict in medical opinion, Asphalt Associates requested the OWC to appoint a physician to perform an independent neurosurgical examination. The OWC appointed Dr. Jack Hurst.
Dr. Hurst examined Watkins on December 1, 1993, and also reviewed the CT scan and myelogram of August 8, 1993. He determined that the defects noted in the diagnostic studies he reviewed were insignificant and that they were not supported by the physical examination he conducted. He also thought that there might be gynecological reasons for her pain; he referred Watkins to a gynecologist. Dr. Howard Stelly, a Lake Charles gynecologist, ruled out gynecological reasons for Watkins pain. Even after receiving Dr. Stelly's report, Dr. Hurst concluded that Watkins would not benefit from lumbar disc surgery. As of January 26, 1994, Dr. Hurst reported that Watkins could return to employment, but she should "avoid repetitive heavy-duty lifting, twisting, pushing and pulling for perhaps 6 weeks before resuming ordinary work-related duties."
Based upon Dr. Hurst's last report, Asphalt Associates paid Watkins supplemental earnings benefits starting on January 26, 1994. On March 9, 1994, Asphalt Associates terminated Watkins' worker's compensation weekly benefits, but maintained payment of her medical benefits.
Subsequent to the termination of weekly benefits, Dr. Foster again recommended that Watkins undergo surgery. When surgical authorization was not forthcoming from Asphalt Associates, Dr. Foster recommended on April 5, 1994, that Watkins begin pain management treatment. Dr. Raggio concurred with Dr. Foster's recommendation.
On August 1, 1994, Watkins was approved for pain management treatment and began consultation with Dr. Frank Lopez, a physician specializing in physical medicine and pain management. An EMG performed on August 17, 1994, indicated to Dr. Lopez that Watkins suffered a S1 radiculopathy on the right side. In his deposition testimony, Dr. Lopez significantly questioned Dr. Hurst's conclusion that Watkins did not have a medical problem.
At the request of Asphalt Associates, Dr. James M. Anderson, a psychiatrist and neurologist, evaluated Watkins on October 20, 1994. After reviewing medical records and examining Watkins, Dr. Anderson concluded that "Ms. Watkin's [sic] pain is organic in nature and she has secondary symptoms of depression and anxiety due to coping with her chronic pain. I do not believe that the pain is a result of hypochondriasis, or that the patient is malingering."
In response to Dr. Lopez's finding, Asphalt Associates also requested that Watkins be re-examined by Dr. Shamieh. He repeated an EMG on December 2, 1994. Based upon this examination, Dr. Shamieh found no abnormality and further stated that Watkins failed to show signs of a S1 radiculopathy affecting her right leg.
In light of the medical findings which suggested a S1 radiculopathy, Asphalt Associates asked Dr. Hurst to re-evaluate Watkins. Initially, in a letter report Dr. Hurst agreed with the findings of Dr. Lopez which suggested that Watkins suffered a right S1 radiculopathy, but he did not think she would benefit from surgery because of the numerous inconsistencies that surfaced during her examinations. Nevertheless, Dr. Hurst stated, "As an absolutely final alternative to her conservative management, someone may wish to offer this lady [Watkins] lumbar discectomy *398 with foraminotomy." Later, in a deposition taken in December of 1994, Dr. Hurst clarified his statement, stating that he was not of the medical opinion that surgery would assist Watkins.
Against this backdrop, the hearing officer held that Watkins proved that she was temporarily totally disabled. Asphalt Associates argues that the hearing officer erred in making this determination. It contends that the findings of Dr. Raggio and Dr. Hurst, independent medical examiners, are clothed with a presumption of correctness and should not have been disregarded by the hearing officer.
Recently, in Johnson v. Temple-Inland, 95-948 (La.App. 3 Cir. 1/31/96), 670 So.2d 388; writ denied, 96-544 (La.4/19/96), 671 So.2d 919, we held that although the courtappointed expert's opinion must be considered prima facie true, the opinion of the court-appointed expert is not conclusive. In that opinion, we cited Menard v. Winn Dixie Louisiana, Inc., 93-1497 (La.App. 3 Cir. 6/1/94), 640 So.2d 775, which held:
Stated differently, while the law permits the hearing officer to appoint a physician to perform an independent medical examination, it does not require the hearing officer to accept his conclusions. A hearing officer simply does not cede the responsibility afforded her office when she chooses to appoint an independent medical examiner.
In evaluating the evidence, the trier of fact normally should accept as true the uncontradicted testimony of a witness, even if the witness is a party. This is because a finding of disability vel non is a legal rather than a purely medical determination. However, where there is conflicting testimony, the factfinder is to determine claimant's disability after reviewing the totality of the evidence, including both lay and medical testimony.
Menard, 640 So.2d at 783.
In Johnson, we also reaffirmed the longheld tenet that the testimony of a treating physician should ordinarily be afforded more weight than that of an examining physician. Johnson, 670 So.2d at 393.
After carefully reviewing the medical and lay testimony, we find that the hearing officer was presented with conflicting evidence on the issue of Watkins' disability. In this instance, the hearing officer gave greater weight to the findings of Dr. Foster, Watkins' treating physician, than the recommendations of the independent medical examiners. When we view the evidence in light of the jurisprudence which sets forth the standard of appellate review, we cannot say the hearing officer's determination was manifestly erroneous. We find Watkins met the heavy burden of proving her disability by clear and convincing evidence. Accordingly, we affirm the hearing officer's order that found Watkins was temporarily totally disabled.
In an ancillary matter, both Watkins and Asphalt Associates contend that the hearing officer abused her discretion when she ordered another independent medical examination to determine whether Watkins needs to undergo surgery. For this purpose, the hearing officer appointed Dr. Warren Williams, a neurosurgeon, to examine Watkins. The hearing officer cited La.R.S. 23:1124.1 as authority for her action.
La.R.S. 23:1124.1 states, in pertinent part, that "... the hearing officer, on his own motion, may order that any claimant appearing before it be examined by other physicians."
After carefully considering this statute, we find that the action of the hearing officer in the case sub judice is analogous to prior case law which sanctioned the practice of holding open a case for the production of additional evidence. See Gary v. Dimmick Supply Co., 427 So.2d 33 (La.App. 3 Cir.1983) and cases cited therein. In that setting, appellate courts have consistently held that the decision to hold open or re-open a case for additional evidence rests within the sound discretion of the trial court and its decision will not be disturbed on appeal unless abused. Id. Likewise, the jurisprudence has also looked to La.R.S. 23:1123 for the authority of the trial court to order additional medical examination if it opined that further medical evidence was necessary. D'Aville v. Travelers Ins. Co., 295 So.2d 454 (La.App. 3 Cir.1974). *399 There, too, case law has focused on whether the trial court abused its discretion in ordering additional medical examinations.
After carefully reviewing this analogous jurisprudence and the record before us, we cannot say that the hearing officer abused her discretion in the present case.

WATKINS' HOURLY WAGE
Asphalt Associates next contends that the hearing officer erred in its determination of Watkins' hourly wage. It argues that Watkins' hourly wage was $7.00, instead of $7.50 as the hearing officer found.
In reviewing the determination in a worker's compensation case, the hearing officer's factual findings will not be disturbed unless they are clearly wrong or manifestly erroneous. Farrill v. Hammond State School, 93-1735 (La.App. 1 Cir. 6/24/94), 639 So.2d 449. An employee's average weekly wage is determined as follows: "If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or forty hours, whichever is greater;...." La. R.S. 23:1021(10)(a)(i).
In the case sub judice, Watkins and her co-workers, Mark McCain and David Comeaux, testified that they were guaranteed a forty hour work week at an hourly rate of $7.50. No documentary evidence was submitted to support their testimony. To the contrary, Asphalt Associates introduced its time and wage records from February 21, 1993, through March 6, 1993, which reflected an hourly rate of $7.00.
After carefully reviewing the evidence on this issue, we find that the hearing officer clearly erred in basing her award on an hourly wage rate of $7.50. The employer's documentary evidence establishes that Watkins was paid $7.00 an hour. The evidence adduced by Watkins simply does not preponderate that she was paid the higher hourly wage. Accordingly, we will amend the order of the hearing officer to reflect the proper hourly rate.

PENALTIES AND ATTORNEY'S FEES
Watkins contends in her answer to the appeal that the hearing officer erred in failing to award her penalties and attorney's fees.
La.R.S. 23:1201(E) directs the hearing officer to assess a 12% penalty for nonpayment unless the employer or the insurer "reasonably controverted" the employee's right to benefits. A claim is reasonably controverted if the employer or the insurer had sufficient factual and medical information to reasonably counter the factual and medical information presented by the employee. Woolsey v. Cotton Bros. Bakery Co., Inc., 535 So.2d 1119 (La.App. 2 Cir.1988), writ denied, 537 So.2d 1168 (La.1989). Under La.R.S. 23:1201.2, the employee is entitled to attorney fees if the failure to pay benefits is found to be arbitrary, capricious, or without probable cause. An award of attorney's fees is precluded when the employer asserts a good faith defense. Holmes v. Int'l Paper Co., 559 So.2d 970 (La.App. 2 Cir.1990). The determination of whether an employer should be cast with penalties and attorney's fees is a question of fact and the hearing officer's findings shall not be disturbed on appeal absent manifest error. Bradley v. Justiss Oil Co., Inc., 618 So.2d 646 (La.App. 2 Cir. 1993).
The medical testimony detailed in the previous section of this opinion shows the divergence of expert medical opinion even on the diagnostic test results generated in the course of treating Watkins. In light of these circumstances, we find no error in the conclusion of the hearing officer that Asphalt Associates was not arbitrary and capricious in terminating Watkins' weekly worker's compensation benefits.
For the foregoing reasons the order of the hearing officer is amended to reflect Watkins' rate of pay as $7.00 an hour and is affirmed as to all other issues. The costs of the appellate court are assessed equally between Watkins and Asphalt Associates, Inc.
AMENDED, AND AFFIRMED AS AMENDED.