hWILLIAMS, Judge.
In this workers’ compensation case, the defendants, Bennett Roofing and Louisiana Workers’ Compensation Corporation, appeal the judgment of the Workers’ Compensation Judge (“WCJ”) ordering the defendants to pay for the claimant to undergo two independent medical examinations. For the following reasons, we affirm.
FACTS
On February 2, 1998, the claimant, Percy Robinson, was injured during the course and scope of his employment as a laborer for the defendant, Bennett Roofing, Inc. At the time of the accident, the claimant was assisting other employees in repairing the roof of a residential establishment. The claimant was attempting to step across the crest of the roof when he stepped on a rotten section of the roof, which collapsed. The claimant’s right leg went through the roof to the level of his groin. The claimant claims that as a result of the accident, he suffered injury to his groin area, which included bleeding *779 from his penis. He also experienced a burning in his neck and a “pulling” sensation from his waist down. The claimant was treated for his injuries at the E.A. Conway Hospital emergency room.
On February 27, 1998, the claimant was treated by Dr. Grant Dona, an orthopedic surgeon. Dr. Dona continued to treat the claimant until December 28, 1998. During the course of this treatment, the claimant complained of pain in his upper and lower back, tailbone area, right and left groin, penis, scrotum and right elbow. The claimant also complained that his right knee felt “chipped,” causing pain during movement. He also complained of pain, cramps and swelling in his left foot and ankle. According to the claimant, his left foot seemed to “lock up,” causing the three central toes to become stiff and the entire foot to feel numb. The claimant further reported that he suffers from headaches, pain at the base of hisj^neck and a “shocking” sensation on the right side of his neck.
Dr. Dona testified that initially, he did not find any objective physical findings to correlate with the claimant’s subjective complaints. He recommended that the claimant consult a urologist and undergo physical therapy “to overcome any decon-ditioning or lack of flexibility which has followed these injuries.” However, after conducting subsequent examinations, Dr. Dona noted that the claimant “... [D]oes, indeed, have some objective evidence of abnormalities, but it’s difficult to tie in some of his existing complaints with the injury as he described it in February.” During an examination of the claimant on October 27, 1998, Dr. Dona noted that the claimant’s feet and ankles were minimally swollen. He concluded that the claimant suffered from “flat feet” and recommended that the claimant wear an arch support, which provided immediate partial relief. With regard to the claimant’s elbow, Dr. Dona concluded that the claimant suffered from irritation of the ulnar nerve of the elbow, or ulnar neritas, and recommended that the claimant avoid positions or activities which caused pressure on the ulnar nerve. During the claimant’s final followup visit, Dr. Dona felt that he had no further suggestions for treating the claimant. He recommended that the claimant continue receiving physical therapy and prescribed Ultram, a non-narcotic pain medication, to be taken as needed for pain.
On March 27, 1998, the claimant was examined by a urologist, Dr. John Berry. In his deposition, Dr. Berry testified that he performed a physical examination and an ultrasound on the claimant which revealed no urological deficit. Dr. Berry testified that it was possible to examine a patient and not “come up with something objective. But there’s no question the guy hurts, and he’s going to hurt for a long time. But I ... don’t have any tests to show it.”
According to Dr. Berry, the claimant had a clinical condition, epididymitis, which was not confirmed by the ultrasound. Dr. Berry explained that the [¡¡epididymis is a small gland that sits on top of the testicle and is the most common cause of scrotal pain. According to Dr. Berry, the epidi-dymis enlarges, inflames or gets infected with various conditions, including trauma, and causes tremendous swelling of the scrotum and severe pain. Dr. Berry also testified that the claimant received medication to correct a problem with his prostate gland which caused him to experience difficulty when voiding.
Dr. Berry also testified that the claimant complained that he was having problems with sexual function. Although Dr. Berry testified that he was not able to relate this condition to the accident, he stated that this condition was not common for a man of the claimant’s age. According to Dr. *780 Berry, pain in the genitalia is likely to lead to problems with erections. The claimant was prescribed Viagra to correct this problem.
The WCJ found that she was unable to make a full assessment regarding the nature and extent of the claimant’s disability as it related to his elbow, his foot and any urinary or bowel problems. As a result, the WCJ ordered that the claimant undergo independent medical examinations by a court-appointed orthopedist and urologist. The defendants appeal.
DISCUSSION
LSA-R.S. 23:1203(A), requires an employer to “furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any non-medical treatment recognized by the laws of this state as legal....” The statute includes treatment that is necessary to relieve the employee of pain which he or she suffers as a result of the disability.
In order to establish a claim for medical benefits, the employee must show, by a preponderance of the evidence, that the predicament complained of arose as a result of a work-related accident. Alleman v. Fruit of the Loom-Crowley, 96-1246 (La.App. 3rd Cir.3/5/97), 692 So.2d 485. “Proof by a preponderance of the | ¿evidence is sufficient when the evidence taken as a whole, shows that the fact sought to be proved is more probable than not.” Watkins v. Asphalt Assocs., Inc., 96-249 (La.App. 3rd Cir.12/4/96), 685 So.2d 393. Therefore, it must be determined that the employment caused or contributed to the disability, albeit, it is not necessary that the exact reason be found. Augustus v. St. Mary Parish Sch. Bd., 95-2498 (La.App. 1st Cir.6/28/96); 676 So.2d 1144.
In determining whether or not the claimant has discharged his burden of proof, the trier of fact should accept as true a witness’ uncontradicted testimony, even though the witness is a party, absent circumstances casting suspicion on the reliability of that testimony. Watkins v. Asphalt Assocs., Inc., supra. The worker’s testimony, alone, may be sufficient to discharge this burden of proof, provided that two elements are satisfied: (1) no other evidence discredits or casts serious doubt on the worker’s version of the incident and (2) the worker’s testimony is corroborated by the circumstances following the alleged incident. Bruno v. Harbert Int’l Inc., 593 So.2d 357 (La.1992).
A WCJ’s conclusions as to whether the claimant’s testimony is credible and whether the claimant met the required burden of proof are factual determinations which will not be disturbed on review absent manifest error or unless clearly wrong. When the trier of fact’s findings are reasonable in light of the entire record, an appellate court may not reverse a choice between two permissible views of the evidence. Banks v. Indus. Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97); 696 So.2d 551.
Pursuant to LSA-R.S. 23:1123, if a dispute arises as to the employee’s condition, the WCJ is authorized to order an independent medical examination by an impartial doctor. A finding of whether a particular medical treatment is necessary is a factual determination which will not be reversed in the absence of manifest error, or unless it is clearly wrong. Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94); 630 So.2d 733. Our issue on review is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was reasonable, in light of the entire record. Freeman v. Poulan/Weed Eater, supra.
*781 During the trial, the claimant testified that he is schizophrenic, and his mental condition may cause him to exaggerate his complaints. He also testified that he has a bullet in his left leg above his ankle. He admitted that he was involved in multiple automobile accidents and suffered from headaches prior to the work-related accident. With regard to the work-related accident at issue, the claimant testified that he continues to suffer from most of the symptoms he complained of immediately after the accident. According to the claimant, he suffers from genital swelling, has problems urinating, cannot control bowel movements and has pain in his right elbow.
Gertrude Robinson, the claimant’s mother, testified that the claimant lived with her after the accident. Ms. Robinson stated that there were occasions after the work-related accident when the claimant experienced difficulty walking, minimal use of his elbow and problems with his right foot. According to Ms. Robinson, she noticed swelling in the claimant’s genital area that she could see through his clothing. Ms. Robinson testified that since the accident, the claimant has had difficulty controlling his bladder and bowel. She stated that while doing the claimant’s laundry, she noticed that the claimant’s underwear was soiled from stool and urine.
A review of the record reveals that the WCJ was not manifestly erroneous or clearly wrong in ordering that the claimant undergo the independent medical examinations. The claimant claims that his medical conditions are a result of his work-related accident. Testimony from the claimant’s mother supports his contention that most of these medical problems did not exist prior to the accident. The defendants failed to present evidence to contradict the claimant’s claims. | fiFurthermore, the medical evidence presented was inconclusive in determining the cause of the claimant’s various medical complaints. Although both medical experts concluded that the claimant suffered “objective evidence of abnormalities,” they could not state whether the claimant’s work-related injury caused or contributed to the claimant’s medical condition. Thus, the WCJ’s conclusion that the claimant needed to undergo independent medical examinations by an orthopedist and a urologist is supported by the record. This assignment of error is without merit.
CONCLUSION
For the foregoing reasons, the judgment of the WCJ ordering that the claimant undergo independent medical examinations by a court-appointed orthopedist and urologist is affirmed. Costs of this appeal are assessed to the defendants, Bennett Roofing and Louisiana Workers’ Compensation Corporation.
AFFIRMED.