815 So.2d 916 (2002)
April HODAPP
v.
SAM'S WHOLESALE.
No. 01-0772.
Court of Appeal of Louisiana, Third Circuit.
February 6, 2002.
Writ Denied May 3, 2002.
*918 Robert Lawrence Beck, Jr., Rivers, Beck & Dalrymple, Alexandria, LA, Counsel for April Hodapp.
Charles Martin Kreamer, Sr., Allen & Gooch, Lafayette, LA, Counsel for Sam's Wholesale.
Court composed of HENRY L. YELVERTON, JOHN D. SAUNDERS, BILLIE COLOMBARO WOODARD, MARC T. AMY, and MICHAEL G. SULLIVAN, Judges.
SAUNDERS, J., Judge.
In this workers' compensation case, the employer, Sam's Wholesale, appealed the WCJ's finding that a work-related accident occurred and that the claimant, April Hodapp, is entitled to disability benefits and attorney's fees. Ms. Hodapp appealed the WCJ's denial of a discography and seeks additional attorney's fees. We affirm the decisions of the WCJ.

Factual and Procedural Background
Ms. Hodapp worked as an overnight stock person at Sam's Wholesale. In September of 1998, she suffered a work-related injury while lifting a five-gallon bucket of chlorine tablets. Ms. Hodapp was aware of Sam's policy requiring that she immediately report all work accidents, regardless of the nature of the injury or level of seriousness. Nevertheless, Ms. Hodapp failed to report the injury during her shift. Rather, she completed her work and went home.
The record shows that Ms. Hodapp visited the emergency room, at Huey P. Long Charity Hospital in Pineville, two days after the alleged injury, where a doctor diagnosed her with right mild lumbar pain and a tingling sensation in her iliac crest and upper thigh. At this time, instead of informing her treating physician of her work-related injury two days earlier, Ms. Hodapp informed the doctor that she had been experiencing the pain for four to five days. In an attempt to reconcile this discrepancy, Ms. Hodapp explained, at trial, that she was confused over the length of time that she experienced pain because she normally began her shift on one date and finished on another. The court accepted this explanation as reasonable.
On September 16, 1998, Ms. Hodapp completed an accident report. Later that day, Sam's Wholesale sent her to see Dr. Slaughter who diagnosed her with lumbar spasms. He immediately released her for work, but on September 21, 1998, he took her off of work.
When she saw her physician of choice, Dr. Cobb, on November 16, 1998, she had still been off of work, per Dr. Slaughter's request. Dr. Cobb continued that status *919 until December 21, 1998, when he released her to light-duty. Thereafter, Sam's Wholesale provided her with a job that entailed answering the telephone and getting cigarettes for Sam's customers.
Ms. Hodapp returned to work on December 22, 1998. She worked for a few hours before her pain level escalated to such severity that she called Dr. Cobb to release her from work again. Consequently, he recommended steroid injections, which she received on February 11, 1999. A few weeks later, she told him that the injection helped for a few days but provided no long-lasting relief. Dr. Cobb then recommended that Ms. Hodapp see a chiropractor to work on the joint, which she did. However, the employer did not authorize the treatment because the report from Echo Chiropractic Clinic indicated that most of the findings had no relationship to her injury.
On or about March 24, 1999, Sam's Wholesale hired a surveillance team that videoed Ms. Hodapp doing yard work. Shortly thereafter, Sam's Wholesale terminated all her benefits.
At trial, the WCJ found that Ms. Hodapp had proved an "accident" and that Sam's Wholesale failed to prove the availability of work within her medical restrictions. The WCJ also rejected Sam's Wholesale's claim for fraud. Finally, the WCJ found the termination of all benefits was arbitrary and capricious, and awarded Ms. Hodapp attorney's fees of $5,000 for termination of indemnity benefits and $5,000 for termination of medical benefits.

The AccidentLegal Causation
Sam's Wholesale alleges that Ms. Hodapp failed to meet her burden of proving that a work-related accident caused her to suffer from back injuries that required continuous medical treatment. La. R.S. 23:1021(1) defines an "accident" as:
[A]n unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration.
In Quillin v. Calcasieu Marine National Bank, 96-685, p. 5 (La.App. 3 Cir. 12/11/96); 690 So.2d 802, 804; quoting Sparks v. Tulane Medical Center Hospital and Clinic, 546 So.2d 138, 143 (La.1989), this court explained:
The "event" which triggers coverage, then, may be an unexpected and sudden or violent occurrence which causes injury, or it may be an unexpected change in the employee's physical condition which renders him incapable of working, a change caused at least in part by an employment incident.
In order to recover workers' compensation benefits, Ms. Hodapp must show that she was injured by an accident arising out of and in the course and scope of her employment and that the alleged injury required medical treatment or rendered her disabled. La.R.S. 23:1031(A); Davis v. Cajun Bag & Supply Co., 96-1349 (La.App. 3 Cir. 6/25/97); 698 So.2d 39, writ denied, 97-2026 (La.11/14/97); 703 So.2d 625. The claimant bears the burden of establishing, by a preponderance of the evidence, the occurrence of an accident and the causal relationship between it and her resulting disability. Id. "Proof by a preponderance of the evidence is sufficient when the evidence taken as a whole, shows that the fact sought to be proved is more probable than not." Watkins v. Asphalt Assocs., Inc., 96-249, p. 3 (La.App. 3 Cir. 12/4/96); 685 So.2d 393, 395. Therefore, it must be determined that the employment caused or contributed to the disability, although, it is not necessary that the exact *920 reason be found. Augustus v. St. Mary Parish Sch. Bd., 95-2498 (La.App. 1 Cir. 6/28/96); 676 So.2d 1144.
Regarding Ms. Hodapp's burden of proof that she suffered from a workrelated accident, the WCJ accepted her uncontradicted testimony even though she was a party which is appropriate when circumstances casting suspicion on the reliability of that testimony are absent. Watkins, 96-249; 685 So.2d 393. The worker's testimony, alone, is often sufficient to discharge this burden of proof, provided that two elements are satisfied: (1) no other evidence discredits or casts serious doubt on the worker's version of the incident; and (2) the circumstances, following the alleged incident, corroborate the worker's testimony. Bruno v. Harbert Int'l Inc., 593 So.2d 357 (La.1992).
The WCJ's finding that Ms. Hodapp carried her burden of proving a work-related accident necessarily required a credibility assessment. When determinations are based on the credibility of witnesses, the manifest errorclearly wrong standard demands great deference to the trier of fact's findings, for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Canter v. Koehring Co., 283 So.2d 716 (La.1973). Accordingly, we find that the WCJ's findings are reasonable in light of the entire record. As such, we affirm.

Tendered Employment
Sam's Wholesale contends that the WCJ erred in finding that it failed to prove the availability of work to Ms. Hodapp. On December 11, 1998, Dr. Cobb released her to light-duty employment with restrictions: no lifting or twisting, considerable flexibility to change positions, and very limited sitting or vehicular exposures. Sam's Wholesale, then, offered her a "light-duty" position, answering the telephone behind the cigarette counter. However, her actual job responsibilities far exceeded the description. She retrieved cigarette cartons for customers, which required stretching and reaching, and walked around the store and warehouse to obtain price codes for the cashiers. Consequently, Ms. Hodapp aggravated her back to the point that she could not continue the "light-duty" job and requested that Dr. Cobb take her off of work.
The record supports a finding that Sam's Wholesale failed to present evidence that the job offered to Ms. Hodapp was within her medical restrictions at the time. Therefore, we find no manifest error in the WCJ's determination and affirm.

Fraud
The employer filed a fraud claim, pursuant to La.R.S. 23:1208, seeking to forfeit Ms. Hodapp's benefits based on its video surveillance, various statements that Ms. Hodapp made to medical personnel, and her deposition testimony.
La.R.S. 23:1208 provides, in pertinent part:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
. . . .
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
*921 In considering the appropriate interpretation and application of this statute, the Louisiana Supreme Court stated:
Section 1208 is clear and unambiguous and as such will be applied as written. Section 1208 clearly applies to any willful false statements or representations made "for the purpose of obtaining or defeating any benefit or payment." Section 1208 has no language limiting it, to only certain types of false statements, i.e., statements other than those relating to prior injuries. The legislature has imposed no notice requirement in Section 1208, apparently being of the opinion that any claimant should be on notice that false statements made willfully for the purpose of obtaining workers' compensation benefits will not be tolerated and will result in the forfeiture of those benefits. The only requirements for forfeiture of benefits under Section 1208 are that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment.
Resweber v. Haroil Constr. Co., 94-2708, p. 7 (La.9/5/95); 660 So.2d 7, 12 (citations omitted). However, when a statement is made thoughtlessly and inadvertently, as apposed to willfully false, there is no violation of La.R.S. 23:1208. Grant v. Natchitoches Manor Nursing Home, 96-1546 (La.App. 3 Cir. 5/14/97); 696 So.2d 73.
The WCJ concluded that the Plaintiff had not "willfully [made] a false statement or representation for the purpose of obtaining workers' compensation benefits." Specifically, the WCJ judge found that any inconsistency in the Plaintiff's statements was insignificant and inconsequential. Upon review of the record taking into account all of the Plaintiff's testimony, her deposition, and the videotape, we find no manifest error in the WCJ's findings.
We have reviewed the Plaintiffs deposition, and find that only once in her deposition was there an answer that was problematic. That was the response, "I'm not sure" to the question, "[h]ave you worked with a shovel or not out in your yard?" This response taken out of context appears to be untruthful. However, it is hard to find intent to deceive in the context of that response when Ms. Hodapp had just admitted that she did yard work and that she would "fiddle with [her] plants." When the Plaintiff was asked what she meant by "fiddle with your plants," she explained that she would work the dirt around them. This is exactly what the short surveillance showed.
Furthermore, we have carefully examined the surveillance tape, and we have made the following observations. The taping started at 1:06 p.m. and ended at 1:27 p.m., but it did not run continuously. It was stopped four times. Nearly half the time of the clocked surveillance (21:08 minutes) the video was not filming. Thus, the total time that claimant was taped was only 11:34 minutes. Ms. Hodapp was filmed at two locations in her yard. For 3:06 minutes of this time, she was standing still, using the shovel handle as a staff, resting. Accordingly, she was active for only 8:28 minutes of the total 21:08 minutes of surveillance. Ms. Hodapp can be seen moving some soil for an interrupted time of perhaps two minutes. At no time was the shovel more than one-third full of dirt, and the movement of dirt with the tip of the blade was more of a raking than a lifting. Additionally, Ms. Hodapp is shown planting a single one gallon shrub; it took exactly five seconds and she leaned on the shovel handle to do it.
Moreover, most of the time that Ms. Hodapp was on the screen she was in an area of heavy growth. During this six-minute segment her lower body was concealed *922 from the viewer by vegetation. No one can say what the blade was doing because it can never be seen. During this filming, she sometimes stepped up putting one foot on the back of the blade and using the weight of her body to press it down. Ms. Hodapp used her shovel alternately as a shovel, a rake, and a hoe. When she used it as a shovel, she was probably cutting grass. When she used it as a rake, she was probably working the dirt. She used it as a hoe when she simply lifted it up and let it fall. Moreover, Dr. Cobb, who saw the same tape, described Ms. Hodapp's activity as "light to medium." This is a film, plainly edited, showing her using perhaps the only garden instrument she possessed, part shovel, part hoe, part rake, and part staff; fiddling in a less than impressive yard.
So, Ms. Hodapp was caught fiddling with her plants. If this is the kind of activity that supports a charge of fraud against a workers' compensation claimant, a better case can be made against a claimant who is filmed driving to a grocery store; walking across a parking lot; pushing a buggy to shop; picking up and buying a gallon jug of milk, an 87 ounce box of washing powder, and a five-pound sack of potatoes; and driving home and climbing up the steps of her porch to take them into her house.
We find that Ms. Hodapp's quoted responses to the vague and imprecise questions posed to her by the Defendant relating to her use of a shovel are subject to at least two interpretations, one of which is the interpretation given by the WCJ. We do not believe these circumstances demonstrate manifest error, much less proof of fraud. Accordingly, we affirm the decision by the WCJ.

Attorney's Fees and Penalties
The Defendant began paying Ms. Hodapp compensation and medical benefits soon after being notified of her injury. Thus, benefits were commenced timely. Accordingly, the only inquiry is whether the employer acted arbitrarily, capriciously, and without probable cause in discontinuing the payment of compensation and medical benefits so as to warrant imposition of attorney's fees under La.R.S. 23:1201.2.
"Arbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation." Brown v. Texas LA Cartage, Inc., 98-1063, pp. 8-9 (La.12/1/98); 721 So.2d 885, 890; citing BLACK'S LAW DICTIONARY 104, 211 (6th ed.1990). Awards of penalties and attorney's fees in workers' compensation cases are penal in nature and are imposed to discourage the employers' undesirable conduct. Sharbono v. Steve Lang & Son Loggers, 97-110 (La.7/1/97); 696 So.2d 1382.
As a result of the surveillance video and various statements made by Ms. Hodapp, the Defendant claims that it was not arbitrary or capricious in discontinuing the payment of compensation and medical benefits. Thus, the Defendant argues that the WCJ erred in awarding attorney's fees under La.R.S. 23:1201.2.
As we have previously stated, the surveillance video fails to demonstrate fraud under La.R.S. 23:1208. The WCJ concluded that the Defendant acted arbitrary and capricious in terminating Ms. Hodapp's benefits. Upon review of the record, we find this decision by the WCJ to be reasonable. Accordingly, we affirm the award of penalties and attorney's fees.

Denial of Discography
As an assignment of error, Ms. Hodapp asserts that the WCJ's denial of a discography was clearly wrong. Upon review, *923 we find the denial to be reasonable at this time.
The record reflects that although Ms. Hodapp's treating physicians are unable to identify the cause of her pain, each continues to recommend an extensive course of physical therapy. Moreover, as noted by the WCJ, Ms. Hodapp has yet to complete the prescribed physical therapy. Because Ms. Hodapp has not completed the therapy, and in light of the possibility that her pain may be relieved by this therapy thereby making the discography unnecessary, we find it reasonable for the WCJ to conclude that the approval of a discography would be premature. Accordingly, the decision of the WCJ is affirmed.

Additional Attorney's Fees
Finally, Ms. Hodapp contends that she should get additional attorney's fees for the appellate work completed. In light of the findings by this court, this request is well founded. Thus, we award an additional $1,500 in attorney's fees for work done on appeal.

Decree
For these reasons, we affirm the findings of the WCJ in all respects. We also award an additional $1,500 in attorney's fees to the claimant for work done on appeal.
AFFIRMED AS AMENDED.
WOODARD and AMY, JJ., dissent.
WOODARD, J., dissenting in part.
I respectfully dissent from the majority view for the following reasons.
Where false statements are willfully made to obtain benefits and, thus, to defraud the workers' compensation system, we must terminate the benefits.[1] As fact and a credibility determination, the WCJ found that "Ms. Hodapp exaggerates the nature of the complaints of pain that she is having." (Emphasis added.) "Exaggerate" means, inter alia, "to enlarge beyond the bounds of truth."[2] (Emphasis added.) Notwithstanding, he rejected the employer's La.R.S. 23:1208 claim, concluding that she had not "willfully [made] a false statement or representation for the purpose of obtaining workers' compensation benefits" and that any inconsistency within her statements was insignificant and inconsequential.
I believe this conclusion to be manifest error, because the "inconsistencies" and exaggerations directly affected and circumscribed her ability to work and at what level, and, given the context in which Ms. Hodapp made the misleading and inconsistent statements, there is no other likely explanation as to why she did so except to insure that she maintained her benefits.
The record supports the trial court's determination of her exaggeration/misrepresentation. Especially, the video-taped evidence demonstrates that she exaggerated her physical limitations and is able to return to some form of gainful employment. Although the majority characterizes her activities on the tape as minimal, the tope speaks for itself regarding her capabilities. In other words, it is unnecessary to decide whether she was "working the dirt," "fiddling with her plants." hoeing, or raking and for what period of time in order to determine whether she was performing activities beyond those for which she portrayed that she was incapable.
The tape reveals that, during the course of her yard work, she placed both feet on the head of a shovel and used the force of *924 her body to penetrate the soil, lifted the dirt out with the shovel, twisting, and bending down, and lifted a bush and placed it in the holeall very strenuous manual labor, even when done for a short period of time, especially for someone with a back condition, and all beyond her represented limitation at the time. Yet, Ms. Hodapp performed these tasks with apparent ease.
Her ability to do this yard work, regardless of what one calls it, strongly demonstrates her misrepresentation of her physical limitations. In fact, when Dr. Cobb viewed the tape, he determined that the yard work, which she was performing on that day, constituted light to medium duty, the same capacity level which he believed that she should be able to perform at the workplace. Yet, during this time, she basically maintained that she was not able to do anything and she did not know if she was capable of performing the job at the cigarette counter, which Sam's Wholesale had previously offered her. This job was rated light duty and required her only to retrieve cigarettes and answer the telephone.
In her deposition, after the videotape was made, defense counsel asked her about her continuing physical limitations. While contending, "I still have my good days and my bad days," she, also, maintained that "Now, I don't try things" and "I don't lift on nothing." She noted her injuries prevented her from performing even various household tasks and chores.
In her own words:
Q: Have the injuries you've sustained in your accident at Sam's prevented you from doing household tasks, chores?
A: Some things.
Q: What can't you do?
A: Like, what do you mean?
Q: Will, I want you to tell me what you can't do, in terms of chores and household tasks, daily things around the house.
A: Well, there's a variety of things.
Q: Well, then you can tell about them.
A: Just, I don't lift on nothing. I, uh, I, on certain things that I can't lift on, my child, I, you know, there's days that I don't, I don't pick up on her.
Q: Well, what else do your injuries prevent you from doing around the house? You can't lift on your child.
A: I, I mean, there's a lot of things I can't do.
Q: Yes, ma'am, and I'd appreciate it if you'd tell me about them?
A: Like, I mean, what would you want me to tell you about?
. . . .
A: Well, there's a, there's a lot of things that I, I did before. I do practically anything. I would not, you know, put myself in a situation where I would not try something. Now, I don't try things, ...[.]
(Emphasis added.)
Defense counsel asked Ms. Hodapp if she ever worked with a shovel or did yard work.
Q: Now, what about outdoor-type work? Do you do any yard work?
A: That I recall, yeah.
Like, what kind of yard work can you do?
A: I, sometimes I go and I, I fiddle with my plants.
Q: Do you have a garden?
A: No, sir.
Q: Well, explain to me what you mean by "Fiddle with your plants," I believe as you described it.

*925 A: I just, you know, take dead leaves of [sic] them, work the dirt around them.

Q: Is this out in your front or your back yard?
A: I, I'm not sure on that. It could be front or back.
. . . .
Q: Can you, you say work with a shovel outside?
A: I'm not sure.

Q: Do you know if you can work with a shovel or not?
A: I'm not sure.

Q: Have you worked with a shovel or not out in your yard?

A: I'm not sure.

(Emphasis added.)
The videotape revealed her repeatedly performing the same physical activities, which she testified in her deposition that she did not know if she could perform and, at least, one of which she said she did not do anymorelifting. Lifting was one of her medical restrictions, along with twisting, which she also did in the tape when planting a bush. Furthermore, using a shovel to dig a hole to plant a bush is very different from picking dead leaves off plants and working the dirt around them, which she led the court to believe was all that she could and did do.
Her explanation, at trial, for the "inconsistencies" between her testimony of what she could do and her actual activities was that the videotape must have been made soon after she had received the steroid injection, which permitted her to do the work. However, this justification repudiates her declaration to her physician that the injection provided only temporary just a few daysrather than long-term, relief. More than one month had passed between the steroid injection and the date of the surveillance. If her statement to her physician was the truth, her explanation to the court was not. There is no way to reconcile these two statements.
The inconsistencies between the work that she said she was capable of and that which she showed that she was actually capable of spotlight her attempt to mislead. Given the context in which she was asked these questions, it is difficult to conceive of another reason for her to "exaggerate" misrepresentthe truth other than out of a concern that if she said that she was able to dig holes with a shovel and plant bushes that she would lose her benefits. Thus, I would find forfeiture of her benefits. Thus, I would find forfeiture of her benefits beginning on March 24, 1999, the date of surveillance.
NOTES
[1] Resweber v. Haroil Const. Co., 94-2708, 94-3138, p. 7 (La.9/5/95); 660 So.2d 7, 12.
[2] WEBSTER'S NEW COLLEGIATE DICTIONARY (1975).