809 So.2d 1286 (2002)
VILLE PLATTE MEDICAL CENTER
v.
Vicki McGLYNN.
No. 01-1452.
Court of Appeal of Louisiana, Third Circuit.
March 6, 2002.
*1287 James Clarence Lopez, Guglielmo, Lopez & Tuttle, Opelousas, LA, for Ville Platte Medical Center.
Stephen Mark Morrow, Sr., Opelousas, LA, for Vicki McGlynn.
Court composed of SYLVIA R. COOKS, MARC T. AMY and GLENN B. GREMILLION, Judges.
*1288 AMY, Judge.
The employer terminated workers' compensation benefits and subsequently filed this matter seeking a determination as to whether the allegedly injured employee was entitled to continuation of benefits. The employee filed a reconventional demand seeking continuation of medical benefits. The workers' compensation judge found in favor of the employee, awarding past due indemnity benefits and finding the employee entitled to continued medical benefits. Attorney's fees were awarded following a determination that the employer was arbitrary and capricious in its termination of benefits. The employer appeals. For the following reasons, we affirm.

Factual and Procedural Background
Vicki McGlynn, the employee in this workers' compensation matter, alleges that she was injured while in the course and scope of her employment as a nurse at Ville Platte Medical Center. She contends that on February 23, 1999, she injured her back while transferring a patient from a wheelchair to a stretcher. Following the incident, Ms. McGlynn began treating with physicians for her back condition and began receiving medical and indemnity benefits. Ms. McGlynn's employment was terminated in April 1999, due to what the employer contends were prior failures to follow hospital policy.
In August 1999, the employer terminated both indemnity and medical benefits. According to Philip Moory, special investigator for The Claims Center, the claims agency for the insurer of Ville Platte Medical Center, benefits were terminated due to a number of factors, including a prior automobile accident and prior medical problems that involved complaints of pain to the same area of the body. He also testified that Ms. McGlynn's background as a nurse and previous work in the insurance field were factors raising suspicion. In November 1999, months after the termination, the employer filed the disputed claim for compensation instituting this matter, seeking a determination as to whether Ms. McGlynn was entitled to future compensation and whether her complaints were related to her work injury. In December 1999, Ms. McGlynn filed her own disputed claim for compensation, pointing out that indemnity benefits had been terminated and that medical treatment had not been approved since August 1999. Ms. McGlynn alleged that the employer's actions were arbitrary and capricious.
The workers' compensation judge found in favor of Ms. McGlynn, concluding that she exacerbated a preexisting condition in the work-related accident. The workers' compensation judge concluded that Ms. McGlynn was disabled from the accident until August 2000, and that she was entitled to the continuation of medical benefits associated with the work-related accident. The employer's termination of benefits in August 1999 was found to be arbitrary and capricious. Attorney's fees were awarded in the amount of $15,000.00.
The employer appeals, asserting error in: 1) The finding that Ms. McGlynn was disabled; 2) The determination that Ms. McGlynn was disabled until August 2000; and 3) The awarding of attorney's fees.

Discussion

Disability
In its first assignment of error, the employer argues that the injuries complained of by Ms. McGlynn are not attributable to the work-related, lifting accident *1289 of February 23, 1999. It points out that, following the work-related accident, Ms. McGlynn was primarily treated by Dr. Stephen Vidrine and Dr. Stephen Rees. However, the employer contends that prior to the accident, Ms. McGlynn had been treating with Dr. Vidrine for what it contends were other, similar injuries. It contends that only Ms. McGlynn testified that her injuries from a December 1998 automobile accident had resolved prior to the work-related accident of February 23, 1999. It points to medical records from both physicians it contends demonstrate Ms. McGlynn's continued progress up until the August 1999 termination of benefits.
The workers' compensation judge concluded that Ms. McGlynn's testimony, along with Dr. Vidrine's medical records, demonstrated that any injury Ms. McGlynn sustained in the December 1998 automobile accident had resolved prior to the work-related accident. In written reasons for ruling, the workers' compensation judge explained:
Disability was proved by a preponderance of the evidence. The medical records of Dr. Vidrine, Dr. Rees and Dr. Hodges show that the injury disabled Ms. McGlynn. These medical records are also bolstered by the testimony of Ms. McGlynn. The medical records establish that the disability continued until August, 2000. Dr. Vidrine released Ms. McGlynn to return to work at this time. Dr. Rees felt that Ms. McGlynn could return to work in July of 1999 at a sedentary job with a restriction of four hours per shift. Dr. Hodges felt she could return to work with some restrictions in November of 2000. At no time were any jobs offered to Ms. McGlynn within the restrictions placed on her by her physicians. Burt Ashman testified that in August 1999, Ms. McGlynn was not capable of earning ninety percent of her average weekly wage.
Supplemental earnings benefits are owed from August 1999 to August 2000 at the maximum rate. In August 2000, Ms. McGlynn was returned to work by Dr. Vidrine and has been working since that time.
On appeal, a workers' compensation judge's factual findings are subject to the manifest error or clearly wrong standard of review. Chaisson v. Cajun Bag & Supply Co., 97-1225 (La.3/4/98); 708 So.2d 375. Our review of the record reveals no such error.
According to Ms. McGlynn, the back pain from her December 1998 automobile accident subsided prior to her work-related accident. According to her testimony and Dr. Vidrine's deposition testimony, an injection Ms. McGlynn received on February 5, 1999, gave her relief from her complaints of pain following the automobile accident. Ms. McGlynn testified that she was working forty-hour weeks between the time of the injection and the work-related accident. Following the February 23, 1999 lifting accident, Ms. McGlynn began reporting to Dr. Vidrine with complaints of right sacroiliac joint pain. Both Dr. Vidrine and Dr. Rees testified in their depositions that Ms. McGlynn was suffering from an exacerbation of a prior injury. Dr. Hodges, the employer's choice of physician, testified that the type of injury suffered by Ms. McGlynn could be caused by lifting and that it could aggravate a preexisting condition.
As for Ms. McGlynn's ability to return to work, the employer contends that the records demonstrate that she steadily improved following the accident and that Dr. *1290 Rees' records indicate that: "At the end of May, he felt she could return to working as a registered nurse within six to eight weeks of that visit. He makes note again of her return to work on July 27 and August 11, 1999, however, on these dates he notes that she should return in a sedentary nature with frequent position changes." Our review indicates that the physicians were optimistic about Ms. McGlynn's return to employment. However, Ms. McGlynn was not returned to work and the physicians' depositions indicate that her level of pain was not constant, with Ms. McGlynn often reporting periods of improvement. Dr. Vidrine felt that Ms. McGlynn was able to return to work in August 2000, one year after benefits were terminated in August 1999. He explained that an earlier return would have been premature. Finally, the employer points to reports from Dr. Rees in July 1999, indicating that he felt Ms. McGlynn would be able to return to work in July 1999. However, Dr. Rees indicated that he felt that she could return to a work day of four hours per day, working at a sedentary position. Even if the workers' compensation judge had given weight to this prospect immediately prior to the employer's termination, the employer offered no evidence that a position along these lines was offered or available.
This assignment lacks merit.

Period of Disability
In what is essentially a continuation of the argument made in the above assignment, the employer contests that Ms. McGlynn was disabled until August 2000, one year after compensation benefits were terminated. Again, the employer contends that Ms. McGlynn's complaints were related to the December 1998 accident. The employer refers to a prior opinion of this court, Curtis v. Wet Solutions, Inc., 98-789 (La.App. 3 Cir. 12/09/98); 722 So.2d 421, for the proposition that aggravation of a preexisting disease/infirmity is compensable if it appears that, prior to the work-related accident, disabling symptoms were not manifest, but that such disabling symptoms appeared afterwards and that medical or circumstantial evidence indicates a reasonable possibility of a causal connection. The employer contends that evidence of a causal connection is absent from the record. It argues that, instead, only Ms. McGlynn's testimony as to resolution of pain from the December 1998 automobile accident is present. As explained above, we find no error in the workers' compensation judge's determination that the evidence supported a finding of an exacerbation of the preexisting injury.
Dr. Vidrine treated Ms. McGlynn following the automobile accident and, due to continuing complaints of pain, administered an injection on February 5, 1999, to alleviate her symptoms. Ms. McGlynn testified that a few days after the injection, her pain was lessened. She explained that she was able to work a sixteen-hour shift on the Monday following the injection and that, in the weeks between the injection and the work-related accident, she was able to work a forty-hour week. She testified, however, that after the lifting accident, she suffered from immediate pain. On the day after the lifting accident, Dr. Vidrine reported as follows in his notes:
This is a 32 year old, white female here today because of an exacerbation of some right SI pain that occurred in the ER while at work. We had seen her on 2-5 and injected her right SI because she kind of had a prolonged SI dysfunction. She had substantial benefit from the injection and she was able to return *1291 to work two or three days later and she did very well until she was pulling on a patient and had an exacerbation of her pain. It wasn't quite so bad as she finished her shift but it was much worse when she got home requiring narcotic analgesics in order to get relief. This morning she says that it is somewhat better. She had previously been worked up and this pain is not any different than what she had experienced it is just that it has recurred. Work up was negative for any type of herniated disk.
Dr. Vidrine's impression was reported as follows: "Exacerbation of a recently resolving right SI dysfunction with SI pain." Dr. Rees also testified that he felt Ms. McGlynn suffered from an exacerbation of her preexisting condition and Dr. Hodges explained that lifting could cause such an exacerbation. Although these opinions are necessarily based on Ms. McGlynn's complaints and history given to the physicians, we find nothing in the record to require the workers' compensation judge to discredit the reports given. Furthermore, we find no merit in the employer's assertion that Ms. McGlynn's testimony coupled with medical testimony as to the causal connection is insufficient to support a finding of a work-related disability.

Attorney's Fees
In its final assignment of error, the employer contests both the awarding of attorney's fees and the quantum awarded. It contends that it performed its duties to investigate the claim and that a report of Dr. Hodges in June 1999 indicates that Ms. McGlynn would be able to return to work within four to six weeks. Thus, it argues that its August 1999 termination of benefits was justified. As for the amount of fees awarded, the employer contends that, since $19,084.00 in indemnity benefits was found due, the $15,000.00 awarded in attorney's fees is more than seventy-five percent of the claim and, thus, disproportionate. Further, the employer asserts that since the beginning of this matter, "only eight depositions in this case have been taken. Of these depositions, none lasted two hours, most were relatively short and uninvolved."
La.R.S. 23:1201.2 provides:
Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probably cause, shall be subject to the payment of all reasonable attorney fees for the prosecution and collection of such claims. The provisions of R.S. 23:1141 limiting the amount of attorney fees shall not apply to cases where the employer or insurer is found liable for attorney fees under this Section. The provisions of R.S. 22:658(C) shall be applicable to claims arising under this Chapter.
A workers' compensation judge's decision to award attorney's fees is a factual determination and is accorded much discretion. The decision will be reversed only in the presence of clear error. Joffrion v. Bryant, 98-1439 (La.App. 3 Cir. 4/14/99); 732 So.2d 767, writ denied, 99-1425 (La.10/1/99); 748 So.2d 440.
In written reasons for ruling, the workers' compensation judge considered the factors listed by the claims investigator in support of his determination to terminate Ms. McGlynn's benefits, discrediting each. Concluding his analysis of the factors listed by the investigator, the workers' compensation judge wrote:
The reasons for the termination completely ignore the medical record available *1292 at that time and even more incredibly ignore the subsequent medical that was received from Dr. Hodges who was chosen by the employer as their physician. Benefits were terminated while Ms. McGlynn was under a doctor's care and by the testimony of the vocational rehabilitation counselor unable to earn ninety percent of her wages.
The record supports this determination. The employer points to a June 1999 examination with Dr. Hodges, wherein he opined that Ms. McGlynn would be able to return to work within four to six weeks, after which time benefits were terminated. However, the record indicates that the employer terminated benefits without reexamination by Dr. Hodges at the time of termination. As previously discussed, subsequent examinations by Dr. Hodges, Dr. Vidrine, and Dr. Rees revealed that Ms. McGlynn's ability to work was at least impaired until well into the following year. We conclude that the employer's actions in light of the information available to it and its failure to investigate at the time of termination, support the workers' compensation judge's determination that benefits were terminated arbitrarily and capriciously.
As for quantum, the employer asserts that the $15,000.00 awarded is without basis in the record. In Curtis, 98-789, p. 22-23; 722 So.2d at 433, the court explained that "[t]he factors used to determine this award are the degree of skill and ability exercised, the amount recovered, and the amount of time devoted to this case." The record in this case indicates that Ms. McGlynn's attorney not only defended the disputed claim for compensation filed by the employer, but filed an amended disputed claim on her behalf, participated in telephone conferences, conducted a number of pretrial depositions, conducted discovery which involved medical records from a number of health care providers, and represented Ms. McGlynn at the hearing, questioning the employer's witnesses and presenting witnesses for her case. Further, although the employer asserts that only $19,000.00 in indemnity benefits was due, this figure represented the amount of compensation due for an entire year, benefits Ms. McGlynn would have likely continued to go without if not for assistance of counsel. Additionally, it is incomplete to find that this is the totality of benefits obtained by Ms. McGlynn, as the employer was ordered to provide medical benefits for the future. Again, Ms. McGlynn would have likely remained without this benefit, but for assistance of counsel. Although we recognize that the figure is on the higher end of the spectrum of fees acceptable in a case such as this, we do not find that the workers' compensation judge abused his much discretion in setting the award. Accordingly, this assignment is without merit.

DECREE
For the foregoing reasons, the decision of the Office of Workers' Compensation is affirmed. All costs of this appeal are assessed to the employer, Ville Platte Medical Center.
AFFIRMED.