JjDOUCET, Chief Judge.
Defendants, Grand Casino Coushatta and its insurer, American Interstate Insurance Company (referred to collectively as Defendants), appeal a judgment of a worker’s compensation judge awarding Claimant, Sandie Miller, benefits, and two different sets of penalties and attorney’s fees in connection with an accident at Grand Casino Coushatta. In the event we affirm the actions of the worker’s compensation judge, they seek credit against the temporary total disability awarded for the supplemental earnings benefits they paid. Claimant answered the appeal seeking additional attorney’s fees for the defense of this appeal. We amend the judgment of the worker’s compensation judge to award Defendants credit against the temporary total disability awarded for the supplemental earnings benefits they paid, and we affirm as amended. We also award Claimant additional attorney’s fees for the defense of this appeal.
FACTS
The parties stipulated to the following: (1) Ms. Miller was involved in an on-the-job accident on March 19, 1999; (2) at that time Grand Casino Coushatta was insured by American Interstate Insurance Company; (3) Ms. Miller’s correct weekly compensation rate is $176.81; (3) that Defendants, without reasonable cause, paid the wrong compensation rate between April 13, 1999 and April 20, 2000; (4) that on April 20, 2000, she was paid all back due compensation and was paid at the proper rate thereafter; and (5) that on December 27, 2000, Ms. Miller went to Grand Casino Coushatta seeking to return to work. Defendants also introduced a document prepared by American Interstate Insurance Company in June of 2001 showing what would have been Ms. Miller’s rate of SEB had she returned to work as a silverware |asorter. After one of Claimant’s proposed exhibits was withdrawn, no objections were raised to any other exhibits filed in the case.
LAW AND DISCUSSION
In Breaux v. Hoffpauir, 95-2933, p. 4 (La.5/21/96), 674 So.2d 234, 237 (emphasis ours), the Louisiana Supreme Court made the following observations:
One of the primary goals or purposes of the Workers’ Compensation Act is similar to the primary purpose of the Federal Fair Labor Standards Act— providing protection to workers. Another of the policies behind the Workers’ Compensation Act is to keep the injured *1115 employee and his or her family from destitution. Stelly v. Overhead Door Co. of Baton Rouge, 94-0569, p. 3 (La.12/8/94), 646 So.2d 905, 909. In light of the policies behind the Workers’ Compensation Act, this court has adopted special rules for interpreting its provisions such that to effectuate the remedial policy of the Act, its provisions should be liberally construed in favor of the claimant. Pinkins v. Cardinal Wholesale Supply, Inc., 619 So.2d 52, 55 (La.1993).
With the foregoing precept in mind, we turn to the record in the case sub judice.
At the hearing on the matter held July 25, 2001, only two witnesses testified: Ms. Angelle Durio, the worker’s compensation coordinator for Defendant and the Claimant, Ms. Miller. Both agree that in December 2000, Claimant went to the casino seeking to return to work. Claimant testified that she was seeking to return to work as a silverware sorter. Ms. Durio agreed with that statement, but changed the job description on the application form Claimant filled out to “Beverage Server,” explaining that the casino had no position described as “silverware sorter.” This appears to be the first of many mis-communi-cations and misunderstandings resulting in the instant action
The next misunderstanding occurred when Claimant was asked to fill out a number of forms entered into evidence, in globo, as Plaintiffs Exhibit # 1. According to Ms. Durio, these forms were provided by “the compliance office” and she did not |3see the forms. Ms. Miller refused to fill out the forms (one form is entitled “RELEASE OF ALL CLAIMS”) because of language they contained releasing and discharging Defendant, from among other things, “from any and all manner of actions causes of action, suits, debts, judgments, executions, claims and demands whatsoever, known or unknown, in law or equity.... ” In brief, Defendant argues that it was necessary for Claimant to fill out these forms since “her license to work in a gambling casino had expired” and filling out of these forms is part of the licensing required by the State of all casino employees. However, Defendant admits in brief that Claimant was not informed that this was a routine procedure required of all employees stating (emphasis ours):
“While there is no evidence in the record to indicate whether detailed inquiry and licensing of casino employees is mandated by that Compact [between the Cous-hatta Tribe of Louisiana and the State of Louisiana] or some other source, the documents comprising Exhibit P-1 are clearly designed to protect the public from those whose past conduct militates against their employment in a closed environment in which large sums of money are on display and in which alcoholic beverages are served.”
It is well settled that arguments in brief do not make up part of the record:
Pursuant to La.C.C.P. art. 2164, an “appellant court, shall render any judgment which is just, legal, and proper upon the record on appeal.” [Emphasis added.] An appellate court may not consider evidence which is outside that record ... The briefs of the parties herein assert certain facts not contained in the petition. The briefs of the parties are not part of the record, and this court has no authority to consider on appeal facts referred to in brief (or attachments thereto) which are not in the pleadings (or the evidence when such is presented).
Capital Drilling Co. v. Graves, 496 So.2d 487, 489 (La.App. 1st Cir.1986) (citations omitted). Thus, Claimant’s refusal to sign the forms because she perceived them as general releases, and the worker’s com *1116 pensation judge’s conclusion that the requirement that Claimant complete the forms, before being allowed to try to return to work, constituted a conditional offer of employment are unchallenged. If, indeed, |4these forms are part of the routine application process for employment, the worker’s compensation judge’s judgment provides for their completion upon a showing that the completion of the forms are “no more than employment for any other employee [sic].”
We note that on April 3, 2001, a neurosurgeon, Dr. William Foster, approved Claimant returning to work as a “SILVERWARE SORTER” on a “trial basis” on a form provided by Defendant. This is the only evidence in the record that indicates that Claimant could possibly return to work, albeit in a limited capacity and on a trial basis. Dr. Foster’s report of Claimant’s February 28, 2001 visit states that he recommended “a trial of pain management. Should she fail to respond, then I would certainly consider a myelogram on this lady.” This language does not suggest to us that Claimant was anywhere close to reaching maximum medical improvement. In fact, we find no medical records which state Claimant has reached maximum medical improvement; nor, except for the April 3, 2001 report discussed above, do we find any evidence that Claimant was unconditionally released to return to work, even in a light duty status. Thus, we find no clear error in the worker’s compensation judge’s conclusion that Claimant is still entitled to TTD benefits. We do, however, grant Defendants credit for the SEB payments made against the TTD benefits owed.
 Next, we address the issues of penalties and attorney’s fees. The first award of penalties and attorney’s fees was in connection with Defendant paying the wrong amount of compensation between April 13, 1999 and April 20, 2000. Defendants not only stipulated that this was the case, but they further stipulated that their action was without reasonable cause. Thus, this argument, by their own admission, is meritless. The second set of penalties and attorney’s fees arose out of Defendants terminating | sClaimant’s TTD benefits on December 27, 2000. Considering the fact that Defendants submitted no evidence that they had a reasonable basis upon which to base that action, we find no error in the worker’s compensation judge’s ruling on this issue. Defendants also claim the fees awarded are excessive. The following is well settled: “A workers’ compensation judge’s decision to award attorney’s fees is a factual determination and is accorded much discretion. The decision will be reversed only in the presence of clear error.” Ville Platte Medical Center v. McGlynn, 01-1452, p. 7 (La.App. 3 Cir. 3/6/02); 809 So.2d 1286, 1291, citing Joffrion v. Bryant, 98-1439 (La.App. 3 Cir. 4/14/99); 732 So.2d 767, writ denied, 99-1425 (La.10/1/99); 748 So.2d 440. We find no clear error in the fees awarded.
Finally, we address Claimant’s answer to appeal seeking additional attorney’s fees for defense of this appeal. We award Claimant an additional $2,500.00 in attorney’s fees for work necessitated to defend this appeal.
Accordingly, for the reasons stated, the judgment of the worker’s compensation judge is affirmed. All costs of this appeal are assessed against Appellants, Grand Casino Coushatta and its insurer, American Interstate Insurance Company.
AFFIRMED AS AMENDED.