hGREMILLION, Judge.
The defendant, Albertson’s Inc., appeals the judgment of the workers’ compensation judge awarding the plaintiff, Donna Duhon, back due workers’ compensation benefits, penalties, and attorney’s fees as a result of its arbitrary and capricious actions in terminating her benefits. We affirm.
FACTS
The parties stipulate that Duhon was involved in two work-related accidents while employed in the produce department of Albertson’s. The first accident occurred on September 24, 2000, after which Duhon sought treatment for neck pain from Dr. Michael Seep, a family practitioner, and Dr. Lynn Foret, an orthopedic surgeon. After she was released to full duty by Dr. Foret in December' 2000, Duhon returned to work on January 16, 2001. She worked for approximately three hours before suffering her second work-related injury to her neck. Duhon returned to Dr. Seep and then sought treatment from Dr. William Foster, a neurosurgeon, for her neck and lower back pain. On January 24, 2001, Dr. Foster restricted her from working, stating that she was one hundred percent disabled. Duhon was also examined by Drs. Ricardo Leoni, a neurosurgeon, and Gregory Gidman, an orthopedic surgeon, at the request of Gates McDonald, the third party administrator for Albert-son’s.
On March 7, 2001, Albertson’s terminated Duhon’s weekly compensation benefits pursuant to La.R.S. 28:1208, based on alleged misrepresentations made by her with regard to her work status and her ability to work. As a result of Albertson’s actions, Duhon filed a disputed claim for compensation | Rwith the Office of Workers’ Compensation seeking compensation benefits, penalties, and attorney’s fees based on Albertson’s arbitrary and capricious handling of her claim. Gates McDonald then requested a neurosurgical independent medical examination (IME) of Duhon. The Office of Workers’ Compensation ordered an IME of Duhon to be performed by Dr. Luiz De Araujo, a neurosurgeon. Dr. De Araujo’s report was submitted to the Office of Workers’ Compensation on May 7, 2001. He felt that Duhon’s problem was mainly myofascial syndrome of the cervical and lumbosacral regions, so he suggested myelograms and post-myelo-grams CAT scans of those areas in order to rule out the possibility of disc hernia- *1192 tions at C6-7 and in the lumbar area. These were performed on May 14, 2001. Considering the results of these tests, Dr. De Araujo felt that Duhon had mild fora-minal stenosis at C6-7 on the left side. He recommended that she undergo a work hardening program, followed by a functional capacity evaluation in order to determine her limitations before returning her to work. In response to Duhon’s claim, Albertson’s answered and pled the affirmative defense provided by La.R.S. 23:1208.
Following a hearing on the merits, the workers’ compensation judge rendered judgment in favor of Duhon awarding her all back due workers’ compensation benefits. She further held that Albertson’s had acted arbitrarily and capriciously in terminating her benefits, thus, she awarded Du-hon $2,000 in penalties and $6,500 in attorney’s fees. Albertson’s has suspensively appealed from this judgment.
ISSUES
Albertson’s raises four assignments of error on appeal. Essentially, it Largues that the workers’ compensation judge erred in finding that it failed to prove that Duhon made material misrepresentations for the purposes of obtaining weekly compensation benefits when she failed to disclose that she assisted her husband and son with a paper route. It further argues that the workers’ compensation judge erred in awarding Duhon penalties and excessive attorney’s fees. Duhon has answered the appeal seeking additional attorney’s fees for work done on appeal.
FORFEITURE OF BENEFITS
La.R.S. 23:1208(A) provides, “It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.” Thus, in order for an employer to prove forfeiture pursuant to La.R.S. 23:1208, it must prove that a false representation was willfully made by the employee for the purpose of obtaining compensation benefits. Resweber v. Haroil Constr. Co., 94-2708 (La.9/5/95), 660 So.2d 7. Whether or not an employee has forfeited her right to such benefits is a question of fact, which will not be reversed on appeal in the absence of manifest error. Smith v. Quarles Drilling Co., 99-171 (La.App. 3 Cir. 6/2/99), 741 So.2d 829, writ denied, 99-1949 (La.10/8/99), 751 So.2d 227.
We have reviewed the record in its entirety and find that the workers’ compensation judge was presented with conflicting views of the evidence. As stated by the supreme court in Stobart v. State, through DOTD, 92-1328(La.4/12/93), 617 So.2d 880, 882, “reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony.”
[¿First, Albertson’s contends that Duhon materially misrepresented her condition in order to obtain compensation benefits. Owen Wall, a senior claims examiner for Gates McDonald, testified that he terminated Duhon’s benefits on March 7, 2001, solely due to inconsistencies between her recorded statements and her actions. Susan Bordelon, the store director for Al-bertson’s, had passed on information she had learned from another employee to Wall that Duhon was assisting her husband with his paper route while she was disabled from her work-related injuries. Based on this information and other alleged “red flags,” he obtained video surveillance of Duhon.[1] This surveillance *1193 failed to reveal that she was assisting in the paper route. After Duhon reported her second work-related accident, Wall again ordered video surveillance of her due to the red flags associated with her file.[2] The total surveillance consisted of twelve to fifteen days between October 2000 and March 2001. Of those days, Wall only had evidence of two days where Duhon was allegedly assisting with the paper route.
On February 4, 2001, the surveillance shows Duhon’s son filling a paper machine with newspapers, while she stands next to it, after which she throws away | Ba handful of plastic binder straps and the scrap paper used to hold the papers together. In a recorded statement of February 16, 2001, Wall repeatedly asked Duhon if she was capable of doing any type of work at all. She stated that she could not. He then asked if she felt capable of assisting anyone in any type of work. She answered, “No.” On March 7, 2001, Wall obtained video surveillance of Duhon riding with her husband in his truck as he delivered papers. After learning of this, he terminated her benefits despite the fact that Duhon had not been released to regular duty work by Dr. Foster and none of the other doctors had recommended that she was capable of regular duty. Although Wall never specifically asked Duhon about her husband’s paper route, he stated that he did not file a claim to terminate her benefits because he felt that this was a clear case of her lying about her condition. He stated that he did not ask her about the route because if she lied in general about working, then she probably would lie just as quickly about specific jobs she was working. Wall testified that he never determined whether Duhon was earning any wages from the paper route.
The conflicting view of evidence comes from Duhon’s testimony. She testified that she has not lied about whether she was working or assisting anybody else with the route. Prior to her accident, she stated that she assisted her husband by doing half of his route for him, but that she stopped after he cut his route in half a month before her first work-related accident. Duhon testified that she rode with her husband two or three times while he delivered the free weekly paper provided by the Lake Charles American Press, but not while he was delivering papers for his regular paper route. She further denied assisting him with the rack sales. Duhon testified that her son filled the paper racks for her husband one day, but that all she did was | spick up the ties holding the papers for him. She further stated that her son was not old enough to drive, thus, she drove him that day. When asked about her answer in the February 16, 2001 recorded statement, Duhon stated that she thought Wall was only questioning her about whether she was able to work or assist anyone at Albertson’s. Her reasoning being that he was Albertson’s claims adjustor and that she thought he was only questioning her about her job with Albert-son’s.
Since the workers’ compensation judge was presented with conflicting views of the evidence, we cannot say that it was unreasonable for her to find that Duhon did not make any material misrepresentations which would justify the termination *1194 of her compensation benefits. There is no evidence that Duhon willfully misrepresented her condition to Albertson’s, nor do we find that the surveillance tape presented definitive evidence that she was working or assisting either her husband or her son with the paper route. Additionally, the testimony elicited at the hearing raised a question concerning the credibility of the employee who reported that Duhon was assisting her husband with the route. Accordingly, the workers’ compensation judge’s finding that Albertson’s acted arbitrarily and capriciously in terminating her compensation benefits is affirmed. This assignment of error is dismissed as being without merit.
PENALTIES AND ATTORNEY’S FEES
Albertson’s argues that the workers’ compensation judge committed legal error in awarding Duhon penalties for the alleged improper discontinuance of her benefits. However, considering our finding above, we find no error in the award of penalties to Duhon.
17Finally, Albertson’s argues that the award of $6,500 in attorney’s fees was excessively high. “Arbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation.” Hodapp v. Sam’s Wholesale, 01-0772, p. 8 (La.App. 3 Cir. 2/6/02), 815 So.2d 916, 922, writ denied, 02-0720 (La.5/3/02), 815 So.2d 825, quoting Brown v. Texas-LA Cartage, Inc., 98-1063, pp. 8-9 (La.12/1/98), 721 So.2d 885, 890, citing BLACK’S LAW DICTIONARY, 104, 211 (6th ed.1990). The decision of the workers’ compensation judge to award attorney’s fees is a factual determination which is accorded much discretion. Accordingly, it will only be reversed if it is clearly wrong. Ville Platte Med. Ctr. v. McGlynn, 01-1452 (La.App. 3 Cir. 3/6/02), 809 So.2d 1286. A review of the record supports a finding that Albertson’s acted arbitrarily and capriciously in terminating Duhon’s compensation benefits. We find no error in the trial court’s award of $6,500. Hodapp, 815 So.2d 916. Accordingly, these assignments of error are without merit.
ANSWER TO APPEAL
An answer to an appeal is equivalent to an appeal from that portion of the judgment complained of. City Sav. Bank & Trust Co. v. Johnson, 286 So.2d 131 (La.App. 3 Cir.1973). Although Duhon answered the appeal seeking additional attorney’s fees for work done on appeal, she has failed to brief that issue. Thus, we may consider the answer to appeal waived. Uniform Rules — Courts of Appeal, Rule 2-12.4; DeRouen v. Audirsch, 25,847 (La.App. 2 Cir. 6/28/94), 639 So.2d 476.
CONCLUSION
For the foregoing reasons, the judgment of the workers’ compensation | ¿judge is affirmed. The costs of this appeal are assessed to the defendant-appellant, Al-bertson’s Inc.
AFFIRMED.

.Wall ordered surveillance because:
1. Duhon did not report her first work-related accident until three weeks after the fact.
2. When she first took off work, she stated that she was doing so because she was sick.
3. The accident was unwitnessed.

. Wall listed the reasons:
1. The reasons previously mentioned.
2. The second accident occurred just three hours after she returned to work.
3. She initially reported that she injured herself lifting a box of bananas, then told him that it was a box of tomatoes, and the doctors' records indicate it was a box of either bananas or tomatoes.
4. Duhon’s complaints continue to shift from her neck to her back.
5. She refused to go back to Dr. Foret, after he released her to return to work after her first work-related accident.